09CV3062
JUDGE KENDALL
MAGISTRATE JUDGE BROWN
BR

# EXHIBIT A

> THIS OPINION IS NOT A
> PRECEDENT OF THE TTAB

Hearing:                                          Mailed:
14 January 2009                                   20 March 2009

## UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

Wal-Mart Stores, Inc.
v.
Franklin Loufrani[1].

————

Opposition Nos. 91150278 and 91154632

————

Franklin Loufrani
v.
Wal-Mart Stores, Inc.

————

Opposition No. 91152145

————

Gary J. Rinkerman of Baker & Hostetler LLP for Wal-Mart
Stores, Inc.

Steven L. Baron of Mandell Menkes LLC for Franklin Loufrani.

————

Before Drost, Mermelstein, and Bergsman, Administrative
Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

———————————————

[1] We note that on December 18, 2008, the Office recorded an
assignment, inter alia, of the Loufrani intent-to-use
applications (Nos. 75302439 and 75977376) from Franklin Loufrani
to The Smiley Company SPRL, a Belgian company. *See* Reel/Frame
No. 3905/0869. The assignment was dated June 22, 2008. Whether
this assignment complied with the requirements of 15 U.S.C.
§ 1060(a) was not developed, and it is not before us.

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

On June 3, 1997, Franklin Loufrani (Loufrani or applicant[2]) filed an application to register the mark shown below in numerous international classes:



SMILEY

On March 26, 1998, applicant requested to divide the application. As a result, Serial No. 75302439 (the original application) contains goods and services in classes 16, 25, 28, 29, 30, 41, and 42. Serial No. 75977376 contains goods and services in Classes 3, 5, 8, 9, 14, 18, 21, 24, 31, 32, 33, 34, 35, 36, 38, and 39. Both applications are based on applicant's allegation of a bona fide intent to use the marks in commerce.[3] The two applications contain hundreds of goods and services. A sample follows: cosmetics for animals, emery boards, feminine hygiene cleansing towelettes, solutions for contact lenses, hunting arms and swords, sugar tongs, electric devices for attracting and

---

[2] We will refer to Mr. Loufrani as applicant even though he is the opposer in the 91152145 opposition.
[3] With its brief in the oppositions in which it is a plaintiff, Wal-Mart raised an unpleaded ground that the applications were void ab initio because Loufrani lacks a bona fide intent to use the mark in commerce. On June 21, 2007, the board held that it would not consider Wal-Mart's belated attempt to raise the issue of applicant's lack of bona fide intent to use the mark in commerce.

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

killing insects, meteorological balloons, diving suits,
electric egg timers, cuff links, urns of precious metal,
newspapers, chalkboards for school and home use, cat coats,
tea balls not made of precious metals, gloves for gardening,
cloth flags, mosquito nets, edible chews for animals, syrups
for making soft drinks, cherry brandy, outdoor advertising
by means of electronic billboard advertising, art
appraisals, communication by telegram, and transportation by
ferry, boat, rail, land, and air.

In both applications, applicant disclaims the "right to
use the representation of a smiling face[4] apart from the
mark as shown." The applications were published on
different dates, No. 75977376 on May 22, 2001, and No.
75302439 on December 10, 2002.

On September 17, 2001, Wal-Mart Stores, Inc. (Wal-Mart
or opposer[5]), filed an opposition to the registration of
applicant's 75977376 application for the mark SMILEY and
design. In its notice of opposition (No. 91150278, p. 2),
opposer alleges that:

> Applicant's proposed mark is incapable of
> distinguishing the goods of the Applicant from the
> goods of others and, therefore, cannot function as a
> trademark and an indicator of source. The "smiley
> face" design is a ubiquitous icon, tracing its origin
> back to the early 1960's in the United States. At the

---

[4] Applicant often refers to the design as a "happy face," while
opposer prefers "smiley design." We will refer to it as a
"smiling face" design.
[5] We will refer to Wal-Mart as opposer even though it is also the
applicant in the 91152145 opposition.

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

very least, Applicant should be required to demonstrate that Applicant's mark has become distinctive….

Opposer further maintains that to the extent that the "smiley face" design is capable of functioning as a trademark, the rights to the same belong to opposer. Opposer first began use of the design it refers to as "Mr. Smiley" at least as early as January 26, 1996, and has continuously used the design in commerce and in interstate commerce since that date….

If the Board were to determine that Applicant's proposed mark is capable of functioning as a trademark and/or has become distinctive, then Opposer submits that there would be a likelihood of confusion between Opposer's mark and Applicant's mark.

In his answer (p. 2), applicant generally denied the salient allegations of the notice of opposition although he did admit "that the 'happy face' design is, in the United States, a non-distinctive designation and, in fact, the 'happy face' design element in Applicant's application has been disclaimed apart from the mark as a whole."

Shortly after Wal-Mart filed the 91150278 opposition, it also filed a trademark application (Serial No. 76320901) on October 3, 2001, to register the mark shown below on the Principal Register for "retail department store services" in Class 35:



Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

The mark is described as "a yellow circle with two eyes and a smiling shaped mouth.  Color is integral to the mark."

After the mark was published for opposition, Loufrani filed a notice of opposition on May 22, 2002.  In its notice (p. 3), Loufrani alleges that Wal-Mart's design "does not serve any trademark function."  Loufrani also alleged that it "offers or may offer many of the same products and services listed" in Wal-Mart's application and that, if Wal-Mart's mark is allowed to register, Wal-Mart "will be able to rely on its registered rights in challenging or contesting opposer's use or registration of a Happy Face Design."  *Id.*

On January 6, 2003, Wal-Mart filed a notice of opposition (No. 91154632) to the registration of Loufrani's 75302439 application for his other SMILEY and design mark. This notice and Loufrani's answer was similar to the papers in the 91150278 opposition.

On January 9, 2003, and August 1, 2003, the board ordered that Opposition Nos. 91150278, 91154632, and 91152145 be consolidated.

<u>The Record</u>

The record consists of the following items:  the file of the involved applications; the testimony deposition of opposer's senior media director, Troy David Steiner, with accompanying exhibits; the testimony deposition of Gary F.

**Opposition Nos. 91150278 and 91154632**
**Opposition No. 91152145**

(Rusty) Scholtes, an officer of opposer's outside advertising agency, with accompanying exhibits; the testimony and rebuttal depositions of Michael Rappeport, opposer's trademark survey expert, with accompanying exhibits; the testimony deposition of Megha Desai, a summer intern of counsel for applicant's firm, with accompanying exhibits; and applicant's and opposer's notices of reliance.

<u>Issues</u>

We set out below the issues that remain in this proceeding.

1. Loufrani's mark is not registrable because it lacks distinctiveness.

Wal-Mart argues as plaintiff (91150278 Brief at 3) that:

Applicant's Smiley Applications should be refused registration on the ground that they lack distinctiveness because:

1. Applicant disclaimed the smiley symbol in Applicant's Smiley Applications;

2. The word "smiley," especially as juxtaposed with the smiley symbol, is the legal equivalent of the smiley symbol; and

3. A trademark comprised of the smiley symbol (which has been disclaimed as a ubiquitous icon in common use) combined with the word "smiley" does not make Applicant's Smiley Applications inherently distinctive in their entirety.

2. Loufrani's mark is likely to cause confusion with opposer's mark.

Opposer also argues that there is a likelihood of confusion between its mark and applicant's mark because the

6

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

marks are virtually identical and the goods and services are
related.

> 3. Wal-Mart's mark is not registrable because it is a
> "ubiquitous icon."

Loufrani argues as plaintiff (91152145 Brief at 3) that
Wal-Mart's design "is a unique example of a ubiquitous icon
which should not be usurped for private trademark use
because: (1) Not all symbols and advertising slogans
function as marks; and (2) The evidence shows that Wal-
Mart's Happy Face Design is an unregistrable ubiquitous
icon."[6] While at first blush, it may appear that Loufrani
is taking an inconsistent position with respect to the
distinctiveness of the smiling face design, we note that
Loufrani has disclaimed the exclusive right to use the
smiling face design and asserts that its mark is registrable
because of his addition of the word "Smiley."

<u>Standing</u>

Before we can begin our discussion on the merits, it is
necessary to address some preliminary matters. We start by
noting that an opposer must have standing to bring an
opposition proceeding. An opposer must have "a 'real

---

[6] Loufrani argues that letters of protest and the examining
attorney's Office action are the law of the case. This is not
correct. *See In re Urbano,* 51 USPQ2d 1776, 1778 n.5 (TTAB 1999)
(Letters of protest) and *McDonald's Corp. v. McClain,* 37 USPQ2d
1274, 1277 (TTAB 1995) ("Applicant's argument that the Board is
somehow required to adopt the Examining Attorney's conclusion
that applicant is entitled to registration is also not well
taken").

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

interest' in the outcome of a proceeding in order to have
standing." *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d
1023, 1025 (Fed. Cir. 1999). "To establish a reasonable
basis for a belief that one is damaged by the registration
sought to be cancelled, a petition may assert a likelihood
of confusion which is not wholly without merit." *Lipton
Industries v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ
185, 189 (CCPA 1982).[7] The evidence shows that both Wal-
Mart and Loufrani have a real interest in these proceedings.

### Priority

Inasmuch as Wal-Mart claims that there is a likelihood
of confusion, we address the question of priority. Wal-
Mart, "as plaintiff in the opposition proceeding, bears the
burden of proving, by a preponderance of the evidence, its
asserted grounds of … priority and likelihood of confusion
…" *Genesco Inc. v. Martz*, 66 USPQ2d 1260, 1267 (TTAB 2003).
Because it did not plead ownership of a trademark
registration, Wal-Mart must show use of the mark prior to
Loufrani's priority date.

Loufrani's application was filed on June 3, 1997. He
can rely on this date as his constructive use date. *Zirco
Corp. v. American Telephone and Telegraph Co.*, 21 USPQ2d

---

[7] Because of the linguistic and functional similarities of the
opposition and cancellation provisions of the Lanham Act, "we
construe the requirements of those two sections of the Lanham Act
consistently." *Ritchie*, 50 USPQ2d at 1025 n. 2.

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

1542, 1544 (TTAB 1992) ("If an intent-to-use applicant were
not allowed to rely upon the constructive use date prior to
actual use and registration of its mark, it would be
rendered defenseless in any opposition against the
registration of its mark based on likelihood of confusion.
Constructive use would only function as a sword in
affirmative actions by an intent-to-use applicant and only
after the registration of its mark, never as a shield in
actions against that applicant prior to the registration of
its mark"). *See also Larami Corp. v. Talk To Me Programs
Inc.*, 36 USPQ2d 1840, 1846 (TTAB 1995) ("Thus, a mark may be
registered -- and receive the benefits of constructive use
under Section 7(c) -- even if the claim of acquired
distinctiveness was made after the filing date of the
application and even if the use on which the claim of
distinctiveness was predicated was made mostly after the
filing date of the application").  Inasmuch as he has not
submitted any evidence of an earlier date of use, Loufrani's
priority date is June 3, 1997.[8]

     In order to meet the first of its burdens of proof,
Wal-Mart must be able to show that it has used its mark
prior to Loufrani's June 3, 1997, priority date.  In

---

[8] To the extent that an applicant's mark is a merely descriptive
mark without acquired distinctiveness, priority would not be an
issue because its mark would not be entitled to registration on
the Principal Register.

9

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

addition, Wal-Mart must show that its common law trademark is distinctive, inherently or otherwise, as well as priority of use. *See Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 44 (CCPA 1981) ("[I]t is equally clear that if an opposer's alleged means of trade designation is not distinctive -- does not identify source -- then there is no basis upon which to compare such a thing with the applicant's mark to determine whether confusion as to source is likely").

> Under the rule of *Otto Roth*, a party opposing registration of a trademark due to a likelihood of confusion with his own unregistered term cannot prevail unless he shows that his term is distinctive of his goods, whether inherently or through the acquisition of secondary meaning or through "whatever other type of use may have developed a trade identity." *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d at 1320, 209 USPQ at 43. The *Otto Roth* rule is applicable to trademark registration cancellation proceedings as well.

*Towers v. Advent Software Inc.*, 913 F.2d 942, 16 USPQ2d 1039, 1041 (Fed. Cir. 1990).

Wal-Mart's mark consists of a yellow smiling face. Wal-Mart notes (91150278 Brief at 24 n.13) that:

> [It] was not asked to submit evidence of acquired distinctiveness during the prosecution of its application Serial No. 76/320,901 for Opposer's Smiley Mark for retail department store services [before the application] was accepted for publication by the Examining Attorney without the need of demonstrating acquired distinctiveness under Section 2(f) of the Lanham Act, nor did Opposer seek registration pursuant to Section 2(f) when its application was filed.

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

Wal-Mart must establish its priority date for its mark
in the 91150278 and 91154632 oppositions and, in the event
that we find that its common law mark is not inherently
distinctive, it must show that its mark has acquired
distinctiveness. A finding that Wal-Mart's mark has
acquired distinctiveness in the 91150278 and 91154632
oppositions will have an impact on the priority issue in the
91152145 opposition. In that opposition, Loufrani is
opposing the registration of Wal-Mart's application for the
same "smiling face" design that Wal-Mart is relying on in
the other oppositions. The application for that design was
published as an inherently distinctive mark without
resorting to Section 2(f) acquired distinctiveness.
However, an applicant can rely on a claim of acquired
distinctiveness to defeat an opposer's claim that an
applicant's mark is merely descriptive even if the
application was published without resort to Section 2(f).
*See Coca-Cola Co. v. Seven-Up Co.*, 497 F.2d 1351, 182 USPQ
207, 209 (CCPA 1974) ("The first ground of attack, without
citation of authority, is based on appellee's not having
filed its application under Section 2(f) of the Act. The
attack must fail. Because the examiner had never raised a
question of descriptiveness and appellee never considered
its mark to be descriptive, there was no reason to have
filed under Section 2(f) or to have amended the application

11

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

to bring it under that section"); *Perma Ceram Enterprises Inc. v. Preco Industries Ltd.*, 23 USPQ2d 1134, 1139 n.13 (TTAB 1992) ("Although the application did not include a Section 2(f) claim, the defense of acquired distinctiveness clearly could have been raised"); and *Colonial Arms Corp. v. Trulock Firearms Inc.*, 5 USPQ2d 1678, 1680 (TTAB 1987) ("Moreover, we disagree with opposer's statement that because the application was not made pursuant to the provisions of Section 2(f), the question of whether the term has acquired distinctiveness is not in issue. This factual question is relevant to our determination of the descriptiveness of the mark, and applicant should not be deprived of an opportunity to show such distinctiveness in response to opposer's charge of descriptiveness simply because its application was not published under Section 2(f)").

We agree with Loufrani, and indeed with Wal-Mart,[9] that the "smiling face" design is a ubiquitous, non-inherently distinctive design. The evidence shows that the "smiling face" is a common, non-inherently distinctive design. In addition to Wal-Mart's own statement, there is evidence of

---

[9] *See* Wal-Mart's 91150278 Notice of opposition at 2. The "smiley face" design "is a ubiquitous icon, tracing its origin back to the early 1960's in the United States. At the very least, Applicant should be required to demonstrate that Applicant's mark has become distinctive." *See also* Wal-Mart's 91154632 Notice of opposition at 2 (same).

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

the widespread, ornamental use of the smiling face design

that would lead consumers to believe that it is not serving

a trademark function. *See* Desai Dep. Exhibits (Smiling face

design shown on a variety of items emanating from different

entities including stress balls, puzzles, shot glasses,

movie advertisements, software, cigarette lighters,

magazines, ties, stickers, flower pots, lollipops, T-shirts,

etc.). *See also Charlotte Observer*, February 27, 1989:

> When the "smile" face became a fad in 1970, it was a
> lighthearted punctuation mark at the end of a
> tumultuous decade. Now, after nearly 20 years in
> eclipse, the happy face is back, its 100-watt smile
> lighting up T-shirts, canvas tote bags, spandex cycling
> shorts and other merchandise in newly opened shops at
> Macy's and Bloomingdale's stores in New York and
> Chicago.
>
> In Charlotte, Smiley popped up two years ago at the
> Perris store, where pendants with his mug were sold.
> Last year, the store carried T-shirts plastered with
> Smiley… This year, Smiley goes beyond boutiques and
> specialty shops.

*San Francisco Chronicle*, April 4, 1989 ("Then he went for

200 buttons and further into the smiley underworld of night

lights and yo-yos, golf balls, key rings, pencil sharpeners,

lunch bags, lamp shades and full breakfast sets. He had the

market cornered and moved his bed into the dressing room to

establish his bedroom as a smiley shrine"). Such common

ornamentation is not normally inherently distinctive. *See*

TMEP § 1202.03(a) (5th ed. September 2007) ("The

significance of the proposed mark is a factor to consider

when determining whether ornamental matter serves a

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

trademark function. Common expressions and symbols (*e.g.*,
the peace symbol, 'smiley face,' or the phrase 'Have a Nice
Day') are normally not perceived as marks"); *In re Wakefern
Food Corp.*, 222 USPQ 76, 78 (TTAB 1984) ("We fully agree
with the Examining Attorney that this relatively common
merchandising slogan [WHY PAY MORE!] does not act or
function as a mark which identifies and distinguishes
applicant's services from those of others"); and *In re
Tilcon Warren, Inc.*, 221 USPQ 86 (TTAB 1984) (WATCH THAT
CHILD displayed on the front bumper of trucks does not
function as a trademark for construction material).

Inasmuch as Wal-Mart's smiling face design is not
inherently distinctive, we must determine if it acquired
distinctiveness prior to Loufrani's priority date of June 3,
1997. Wal-Mart alleges that it began using its mark at
least as early as January 26, 1996. Therefore, the question
is whether Wal-Mart's mark acquired distinctiveness in a
little more that eighteen months. Considering that we have
already determined that the smiling face is a common feature
of modern American culture, this will not be something that
is easily achieved. However, Wal-Mart has submitted a
significant amount of evidence to support its argument that
its mark has acquired distinctiveness. Unfortunately, most
of the evidence has been marked confidential, which limits
the reference we can make to the evidence. However, the

14

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

evidence shows that in 1996, Wal-Mart began an extensive advertising campaign. Below is an excerpt from Wal-Mart's use of the smiling face design in a circular from February of 1996. Steiner dep., Ex. 15.



At the bottom of the same page, there is another use of the design:



Similar designs appear throughout the circular. These circulars are "very representative" of the "circulars that have been used since the inception of the smiley used by Wal-Mart." Steiner dep. at 10.

While the amount of money that Wal-Mart has spent on advertising is confidential, we can summarize it as truly impressive even in the relatively short period before applicant's priority date. *See* Steiner dep. at 11. In addition to circulars, Wal-Mart has used the mark "inside Wal-Mart for signing, for our in-store television network …

15

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

along with buttons and balloons [and] … vests that carry the
smiley face that the associates [employees] wear." Steiner
at 15. Again, Wal-Mart's spending on these additional uses
of the smiling face design has been very significant even in
the period between its first use and applicant's priority
date. In 1996, Wal-Mart's advertising, which included its
smiling face design, involved primetime network and cable
television advertising. Scholtes dep. at 49. Again, the
cost of this television advertising was substantial.
Scholtes dep. at 46 and Ex. 8 (1996 television commercial).

We conclude that because of the very extensive use and
advertisement of the smiling face design for Wal-Mart's
retail department store services, opposer's mark acquired
secondary meaning for retail department store services prior
to applicant's priority date. We reach this conclusion
despite the fact that the smiling face is a nearly
ubiquitous symbol and that Wal-Mart had to acquire secondary
meaning in a relatively short period of time. We note,
however, that there is little evidence of any substantial
use by other retail department stores of a similar smiling
face design.

### Distinctiveness of Loufrani's Marks

Wal-Mart has argued that Loufrani's mark cannot be
registered without a showing of acquired distinctiveness.
Wal-Mart has challenged the distinctiveness of Loufrani's

16

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

mark in its two applications. Loufrani responds by arguing
that his marks "comprise both the 'Smiley' word element and
the Disclaimed Design. Loufrani's multiple United States
trademark registrations for the 'Smiley' word create a
presumption that the 'SMILEY' word is inherently
distinctive. Combining the inherently distinctive 'Smiley'
mark with the Disclaimed Design does not render the
composite Mark unprotectable." 91150278 Brief at 12.
However, the "basic flaw in [applicant's] analysis is that
each application for registration of a mark for particular
goods must be separately evaluated." *In re Loew's Theatres,
Inc.*, 769 F.2d 764, 226 USPQ 865, 869 (Fed. Cir. 1985).

Wal-Mart argues that the "public uses the term 'smiley
face' as the actual name for the Disclaimed Design; and
Loufrani's use of the term 'SMILEY' merely connects the term
'smiley face' to the Disclaimed Design in the minds of
consumers." 91150278 Brief at 2 (numbering omitted).
According to Wal-Mart, the term "SMILEY" is the legal
equivalent of the smiling face design. Opposer points to
Loufrani's own evidence that he submitted to show that the
smiling face design was ubiquitous and that the design is
frequently referred to as "Smiley" or "Smiley Face." *See*
Desai dep. Ex. 1 (emphasis added):

DESAI009 - World's #1 Shop for **Smiley** Face Collectibles

DESAI021 - **Smiley** Dude Stress Toy

17

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

DESAI038 - **Smiley** Face Amenity Signs

DESAI043 - **Smiley** Face

DESAI053 - hand-decorated **smiley** face cut-out butter cookies

DESAI067 - Mini **Smiley** Faces

DESAI068 - A **Smiley** Face

We take judicial notice[10] of the following definition of "Smiley" - "a circular, smiling yellow face. (The face appears on labels, pin-on buttons, hand-drawn, etc. It is possible to re-create the smiley face on any keyboard through the use of punctuation symbols." Spears, *Slang American Style* (1996).

Furthermore, Loufrani's witness included a series of pages that show various "smiley faces" including "The Annoyed smiley face," "The Astonished smiley face," "Smiley in Awe," "The Bored smiley face - Bored and discontented, a glum and sullen smiley, maybe grumpy smiley would have been a more appropriate title." DESAI074-077. *See also* DESAI072 ("The U.S. Postal Service unveiled the first smiley face postage stamp"); *Chicago Tribune*, July 5, 2005 (DESAI070) ("[T]here are an estimated 50 million smiley face buttons in the United States").

---

[10] *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

Indeed, the term is sometimes used to refer to Wal-Mart. *See Kansas City Star*, October 6, 2003 ("The tribute in Ad Age was very apropos for Magee's work at the agency, featuring Smiley, the well-known icon used in much of Wal-Mart's advertising"); *Arkansas Democrat-Gazette*, May 31, 1998 ("Suddenly the calm is broken as Mr. Smiley, the yellow happy-face character who stars in Wal-Mart commercials, starts whistling…"); *Providence Journal-Bulletin*, May 17, 1999 ("When Bradley asked for a smiley button, Boldt was ready with four. Do you want a regular smiley, a Wal-Mart one, one riding a school bus or an angel one?") (stray characters omitted).

Here, Loufrani has applied to register a design that is variously referred to as a "happy face" or a "smiling face" or a "smiley." Loufrani has disclaimed this ubiquitous symbol. The only other feature of the mark is the term "smiley." In the typical case, it is the words that are descriptive and the addition of a fanciful design creates a mark that is registrable on the Principal Register. *In re Miller International Co.*, 312 F.2d 819, 136 USPQ 445 (CCPA 1963) (Fanciful design and words "Stereo-Fidelity" held registrable on the Principal Register composite mark for phonograph records); and *In re Clutter Control, Inc.*, 231 USPQ 588 (TTAB 1986) (Descriptive words CONSTRUCT-A-CLOSET

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

registrable on the Principal Register because of its
distinctive display).

In this case, it is clear that the design in Loufrani's
mark is not distinctive and the question is whether the word
"Smiley," which is the name of the design is also non-
distinctive. A mark consisting of a non-distinctive word
and a design related to the word may be, in its entirety,
unregistrable on the Principal Register. *In re Certified
Burglar Alarm Systems*, 191 USPQ 47, 49 (TTAB 1976) ("In the
case at bar, the seal represents a guarantee, as does the
word "CERTIFIED" and … adds nothing to the registrability of
the composite mark." CERTIFIED and the design of a seal not
registrable). *See also In re Scovill Mfg. Co.*, 143 USPQ
161, 162 (TTAB 1964):

> Applicant has disclaimed the literal portion of the
> composite apart from the rest of the mark as shown. As
> proven by applicant, a ribboned seal is inherently weak
> and lacking in distinctiveness. Moreover a seal is
> something that confirms, ratifies or makes secure, such
> as a guarantee or assurance. (See Webster's Third New
> International Dictionary, 1961). The design here
> complements the literal portion and does not create an
> impression separate and apart therefrom. This design
> adds nothing to the registrability of the composite.

*Accord Thistle Class Ass'n v. Douglass & McLeod, Inc.*, 198
USPQ 504, 512 (TTAB 1978) ("The only question in dispute is
whether 'THISTLE' and the 'THISTLE' emblem are merely
descriptive of, or the common descriptive name of, a class
of sailboats. This must be answered in the affirmative").
We must consider the mark in its entirety. The question of

20

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

whether SMILEY may, on its own, be inherently distinctive,
is not at issue. Loufrani's mark consists of the smiling
face design, which he has disclaimed and admits to being a
ubiquitous, non-inherently distinctive symbol, with a common
name of that symbol, SMILEY. Normally, we would be hesitant
to conclude that the word "Smiley" is not inherently
distinctive in an intent-to-use application. However,
applicant's mark has shown us how the word will appear if he
uses the mark, i.e., in small print under a picture of a
smiling face.



SMILEY

Loufrani's admission that the design is ubiquitous and his
disclaimer of the design applies to all the classes in his
applications. Therefore, we are not left to speculate about
whether the smiling face design is distinctive for any of
the classes of goods or services. Loufrani admits it is
not. Therefore, when consumers encounter applicant's mark,
they will view the entire mark as ornamental inasmuch as it
consists of a ubiquitous, non-distinctive symbol and the
commonly used name of the symbol. This conclusion appears
inescapable. Therefore, because Loufrani has not shown that
his marks have acquired distinctiveness, we sustain the

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

oppositions to their registration on the ground that they are not distinctive.

## Likelihood of Confusion

For the sake of completeness, we now move on to the question of likelihood of confusion. When there is an issue under Section 2(d), we analyze the facts as they relate to the relevant factors set out in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003) and *Recot, Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000).

The first factor we will consider is the relatedness of the goods and services. As indicated above, applicant has applied to register its mark for hundreds of goods and services. Some of the goods and services in Loufrani's applications include: facial soaps and shampoos (Class 3); antiseptics, medicated mouthwashes and vitamin supplements (Class 5); scissors and hand tools (Class 8); video cassette recorders, microprocessors, computer monitors, radios and television sets (Class 9); jewelry, necklaces, and watches (Class 14); photo albums, glue for stationery or household purposes, and daily planners (Class 16), umbrellas and pocket wallets (Class 18); combs and non-electric toothbrushes (Class 21); bath linen and bed linen (Class

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

24); T-shirts, shorts, and trousers (Class 25); footballs,
dolls, and jigsaw puzzles (Class 28); soups, jellies, and
jams (Class 29); corn chips and chewing gum (Class 30),
decorative dried plants and animal litter (Class 31); fruit
juices and soft drinks (Class 32); wines (Class 33);
tobacco, matches, and cigarette lighters (Class 34); rental
of advertising space (Class 35); charitable fund raising
(Class 36); cellular telephone services (Class 38);
arranging travel tours as a bonus program for credit card
customers (Class 39); rental of books, radios, videotapes,
videotape recorders and video cassette recorders (Class 41);
and beauty salons and rental of chairs, tables, and table
linen (Class 42). In this case, applicant's goods and
services include many goods and services that would be the
types of goods and services available in opposer's retail
department stores. We must consider the goods and services
as they are described in the application. *Octocom Systems,
Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16
USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion
that the question of registrability of an applicant's mark
must be decided on the basis of the identification of goods
set forth in the application regardless of what the record
may reveal as to the particular nature of an applicant's
goods, the particular channels of trade or the class of
purchasers to which the sales of goods are directed"). *See*

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

*also Paula Payne Products v. Johnson Publishing Co.*, 473
F.2d 901, 177 USPQ 76, 77 (CCPA 1973).

Wal-Mart has included evidence to show the types of
goods and services it sells in its stores. *See* Steiner Dep.
Ex. 15. These items include hair care products, medicine,
soap, cleaning supplies, clothing, cereal, popcorn, cookies,
mouthwash, corn chips, car care products, pens, notebooks,
videotapes, diapers, gas grills, dolls, puzzles, watches,
wallets, cat food, scissors, day planners, crayons, glue,
calculators, printer paper, key cutting services, microwave
ovens, candy, televisions, toys, fruit drinks, soda,
toothbrushes, fabric softener, trash bags, computers, music
CDs, rugs, pillows, towels, books, lamps, and mirrors.
Loufrani has also submitted Wal-Mart's response to his
interrogatory that set out the goods and services in
Loufrani's application and lined through the items that
"were not offered" by Wal-Mart. Loufrani's Notice of
Reliance on Wal-Mart's supplemental response to Loufrani's
Interrogatory No. 3. Based on the evidence of record, we
find that there is a relationship between Wal-Mart's
department store services and the goods in Classes 3, 5, 8,
9, 14, 16, 18, 21, 24, 25, 28, 29, 30, 31, 32, 33, and 34.
As discussed above, Wal-Mart sells these types of items in
its stores and they are also the type of goods that would be

24

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

found in department stores.[11]  In re *Hyper Shoppes*, 837 F.2d

463, 6 USPQ2d 1025, 1025 (Fed. Cir. 1988), the Federal

Circuit noted the relationship between goods and retail

stores that sell those goods.

> The only aspect of this case which is unusual is that
> the marks sought to be registered are for services
> while the prior registration on which their
> registration is refused is for wares.  Considering the
> facts (a) that trademarks for goods find their
> principal use in connection with selling the goods and
> (b) that the applicant's services are general
> merchandising -- that is to say selling -- services, we
> find this aspect of the case to be of little or no
> legal significance.  The respective marks will have
> their only impact on the purchasing public in the same
> marketplace.

See also In re *United Service Distributors, Inc.*, 229 USPQ

237 (TTAB 1986) {design for distributorship services in the

field of health and beauty aids held likely to be confused

with design for skin cream); In re *Phillips-Van Heusen*

*Corp.*, 228 USPQ 949 (TTAB 1986)(21 CLUB for various items of

clothing held likely to be confused with THE "21" CLUB in

stylized form for restaurant services); and *Steelcase Inc.*

---

[11] We note that confusion is likely if any of the goods or
services in the class are related.  *Tuxedo Monopoly, Inc. v.*
*General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA
1981) ("[L]ikelihood of confusion must be found if the public,
being familiar with appellee's use of MONOPOLY for board games
and seeing the mark on any item that comes within the description
of goods set forth by appellant in its application, is likely to
believe that appellee has expanded its use of the mark, directly
or under a license, for such item").  *See also Shunk Mfg. Co. v.*
*Tarrant Mfg. Co.*, 318 F.2d 328, 137 USPQ 881, 883 (CCPA 1963)
(The "board properly held that where there is likelihood of
confusion as to any of the goods listed in the application, it is
not necessary to rule on other goods listed therein").

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

*v. Steelcare Inc.*, 219 USPQ 433 (TTAB 1983) (STEELCARE INC.
and design for refinishing of furniture, office furniture,
and machinery held likely to be confused with STEELCASE for
office furniture and accessories).  However, we are
reluctant to draw a conclusion that department store
services are related to such services as opinion polling for
business or advertising purposes and accounting services
(Class 35); mutual investment fund services (Class 36);
television broadcasting (Class 38); transportation services
by ferry, boat, land, air and packaging for transportation
(Class 39); conducting classes, seminars and workshops in
the field of foreign language (Class 41); and marriage
bureaus (Class 42) based on the limited evidence of record
on these services.  Therefore, we find that opposer's
department store services are not related to applicant's
services in Classes 35, 36, 38, 39, 41, and 42.

Next, we look at the "*DuPont* factor [that] requires
examination of the similarity or dissimilarity of the marks
in their entireties as to appearance, sound, connotation and
commercial impression." *Palm Bay Imports Inc. v. Veuve
Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73
USPQ2d 1689, 1691 (Fed. Cir. 2005) (internal quotation marks
omitted).  Here, the marks are visually very similar.

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145




The small differences between the marks are unlikely to
be noteworthy.

> The test is not whether the marks can be distinguished
> when subjected to a side-by-side comparison, but rather
> whether the marks are sufficiently similar in terms of
> their overall commercial impression that confusion as
> to the source of the goods or services offered under
> the respective marks is likely to result. The focus is
> on the recollection of the average purchaser, who
> normally retains a general rather than a specific
> impression of trademarks.

*Baseball America Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d

1844, 1848 (TTAB 2004). *See also Grandpa Pidgeon's of*

*Missouri, Inc. v. Borgsmiller*, 477 F.2d 586, 177 USPQ 573,

574 (CCPA 1973); *Johann Maria Farina Gegenuber Dem Julichs-*

*Platz v. Chesebrough-Pond, Inc.*, 470 F.2d 1385, 176 USPQ

199, 200 (CCPA 1972). The designs themselves are almost the

same inasmuch as they consist of a circle with a simple

design of a face with two extended ovals for eyes and

virtually identical smiling mouths.[12]

Applicant argues that the "Wal-Mart's likelihood of

confusion argument is moot because the disclaimed design

cannot function as a mark. A likelihood of confusion is

---

[12] While Wal-Mart mark includes the color yellow, Loufrani's mark
is not limited to any specific color.

27

Opposition Nos. **91150278** and **91154632**
Opposition No. **91152145**

irrelevant where the underlying mark is unregistrable

because it cannot function as a mark." Brief at 18.

"When comparing the similarity of marks, a disclaimed term,

here 'COMMUNICATIONS,' may be given little weight, but it

may not be ignored." *M2 Software Inc. v. M2 Communications*

*Inc.*, 450 F.3d 1378, 78 USPQ2d 1944, 1948-49 (Fed. Cir.

2006). While applicant has disclaimed the design in its

marks, this disclaimer does not remove it from consideration

in our likelihood of confusion analysis. *In re Shell Oil*

*Co.*, 26 USPQ2d 1687, 26 USPQ2d 1687, 1688-89 (Fed. Cir.

1993) ("Shell argues that the words are common dictionary

words, and that since Shell filed a disclaimer of the words

'Right-A-Way', the only issue of registration relates to the

script and the arrow design. The Board correctly held that

the filing of a disclaimer with the Patent and Trademark

Office does not remove the disclaimed matter from the

purview of determination of likelihood of confusion"). *See*

*also In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749,

751 (Fed. Cir. 1985). Therefore, while applicant has

disclaimed the design, it is still a consideration in our

likelihood of confusion analysis.

While applicant also includes the word SMILEY in small

print, we do not find that this additional word is a

significant difference. As discussed earlier, the term

"smiley" describes a design such as applicant's and

28

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

opposer's. Therefore, it is unlikely that consumer would
use this word to distinguish the marks. Indeed, applicant's
survey indicates that 57% of survey participants refer to
Wal-Mart's design as "Smiley Face." Rappeport dep., Ex. 13,
p.7 (An additional 1% identified the design as simply
"Smiley"). *See also* Wal-Mart 91150278 Reply Brief at 3
(public version). We cannot agree with Loufrani that many
consumers would rely on the word SMILEY to distinguish the
marks. The term "smiley" would also be a term that would
apply to Wal-Mart's mark and there would be little, if any,
differences between the meanings of the marks and their
commercial impressions, a smiley or smiling face, would also
be similar if not the same. The small differences between
the marks do not eliminate the similarity of the marks. *See*
*Pickering & Co., Inc. v. Bose Corp.*, 181 USPQ 602, 603 (TTAB
1974) ("When both slogans are considered in their
entireties, as they must be, there is little doubt but that
they are substantially similar in sound and appearance.
And, after a consideration of all the evidence herein, we
are clearly of the opinion that applicant's slogan 'YOU CAN
HEAR THE DIFFERENCE NOW.' so resembles the slogan 'FOR THOSE
WHO CAN HEAR THE DIFFERENCE'").

Furthermore, purchasers of Wal-Mart's and Loufrani's
goods and services would overlap. As we indicated earlier,
many of these goods would likely be found in a retail

Opposition Nos. 91150278 and 91154632
Opposition No. 91152145

department store and, therefore, their channels of trade would similarly overlap and the same purchasers seeking to purchase clothing, electronics, food, toiletries, and similar items are also likely to overlap with customers of department stores that sell these products.

When these very similar marks are used on retail department store services and applicant's goods in Classes 3, 5, 8, 9, 14, 16, 18, 21, 24, 25, 28, 29, 30, 31, 32, 33, and 34, we hold that there is a likelihood of confusion.[13] While we have not held that there is a likelihood of confusion for the services in Classes 35, 36, 38, 39, 41, and 42, we note that, inasmuch as we have found that applicant's mark lacks distinctiveness and does not have secondary meaning, Wal-Mart must nonetheless prevail in its opposition against all the classes for Serial Nos. 75302439 and 75977376 in Opposition Nos. 91150278 and 91154632.

We add that this unusual case presents a rather close case involving a symbol that the parties agree is "ubiquitous." In our analysis, we have also considered the last two du Pont factors (177 USPQ at 567) that concern "the

---

[13] Loufrani also argues that Wal-Mart has turned a "blind eye to rampant third-party use of the Disclaimed Design." Brief at 21. He then points to an example of this usage. We are not persuaded by this argument as it does not involve applicant's department store services and, as Wal-Mart points out, it "has no obligation under trademark law, or otherwise, to enforce its mark against non-infringing uses." 91150278 Reply Brief at 13. In addition, a trademark owner "is not required to act immediately against every possible infringing use." Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp., 680 F.2d 755, 214 USPQ 327, 336 (CCPA 1982).

**Opposition Nos. 91150278 and 91154632**
**Opposition No. 91152145**

extent of potential confusion, i.e. whether de minimis or substantial" and "any other established fact probative of the effect of use."  In effect, applicant is seeking to register his marks for a large number of goods that either are sold in opposer's stores or are the types of goods that would be sold in department stores.  This fact increases the likelihood of confusion to the extent that applicant's mark, if used by a competitor, could result in a department store that used a confusingly similar mark throughout its store on hundreds of items as its house brand.  We have little doubt that under such circumstances, confusion would be likely.

Decision:  The oppositions to the registration of the applications in Opposition Nos. 91150278 and 91154632 are sustained.  The opposition to the application in Opposition No. 91152145 is dismissed.