**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FRANKLIN LOUFRANI, an individual, ) <br> and THE SMILEY COMPANY SPRL, ) <br> a Belgian Company, ) <br> ) <br> ) <br> Plaintiffs/Counter-Defendants, ) <br> ) <br> v. ) <br> ) <br> WAL-MART STORES, INC. ) <br> ) <br> Defendant/Counter-Plaintiff. ) | Case No. 09 CV 3062 <br><br> Judge Virginia M. Kendall <br> Magistrate Geraldine Soat Brown |

**MEMORANDUM OF LAW IN SUPPORT OF FRANKLIN LOUFRANI AND THE SMILEY COMPANY SPRL'S MOTION TO DISMISS COUNTS II-VI OF WAL-MART'S COUNTERCLAIM**

Plaintiffs/Counter-Defendants Franklin Loufrani ("Loufrani") and The Smiley Company SPRL ("Smiley Co.") (collectively, "Plaintiffs"), submit the following memorandum in support of their Motion to Dismiss Counts II-VI of Defendant/Counter-Plaintiff Wal-Mart Stores, Inc.'s ("Defendant") Counterclaim.

## I. INTRODUCTION

Defendant brings a six-count Counterclaim[1] against Plaintiffs seeking a declaratory judgment for a variety of hypothetical claims. Specifically, Defendant requests declaratory relief affirming the TTAB Decision (Count I) and declaring violations of Section 43(a) of the Lanham Act (Count II), trademark infringement under Section 32 of the Lanham Act (Count III), common law trademark infringement (Count IV), violations of the Illinois Uniform Deceptive Trade Practices Act (Count V) and violations of the Illinois Consumer Fraud and Deceptive

---

[1] *See* Defendant's Answer, Affirmative Defenses and Counterclaim. (Docket No. 15.)

Business Practices Act (Count VI). Plaintiffs do not challenge the sufficiency of Count I[2] of the Counterclaim but assert that the Court should dismiss Counts II-VI of the Counterclaim because there is no live case or controversy, and Defendant is seeking an advisory opinion from the Court.

## II. PROCEDURAL BACKGROUND

On May 20, 2009, Plaintiffs filed this lawsuit seeking judicial review of a final decision of the Trademark Trial and Appeal Board ("TTAB"), an administrative agency of the United States Patent & Trademark Office ("USPTO"), pursuant to 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1). The TTAB had sustained Defendant's opposition to Plaintiffs' federal trademark applications to register the SMILEY and design mark ("SMILEY and Design Mark") for a variety of goods and services, based on its descriptive, non-distinctive character, and a likelihood of confusion between Plaintiffs' SMILEY and Design Mark and Defendant's design mark ("Wal-Mart Mark").

On July 13, 2009, Defendant filed its answer, affirmative defenses and counterclaim. Pursuant to agreement of the parties and order of the Court, Plaintiffs were granted until September 2, 2009 to respond to Defendant's counterclaim.

## III. FACTS AS ALLEGED IN THE COUNTERCLAIM

In its Counterclaim, Defendant alleges the following pertinent facts in support of its claims for declaratory judgment affirming the TTAB Decision (Count I), declaratory judgment of trademark infringement under Section 43(a) of the Lanham Act (Count II), declaratory judgment of trademark infringement under Section 32 of the Lanham Act (Count III), declaratory judgment of common law trademark infringement (Count IV), declaratory judgment of the

---

[2] In light of the pending motion to dismiss five of the six counts of the Counterclaim, Plaintiffs need not answer the remaining count. *See Oil Express Nat'l v. D'Alessandro*, 173 F.R.D. 219, 220-221 (N.D. Ill. 1997)

2

Illinois Uniform Deceptive Trade Practices Act (Count V) and declaratory judgment of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI):

Wal-Mart began using its Mr. Smiley Mark in its advertising as early as January 1996. Counterclaim, ¶ 15. According to Wal-Mart, it has "expended massive amounts of resources" in its branding of the Mr. Smiley Mark with its Wal-Mart stores and the Mark is "of inestimable value to Wal-Mart." *Id*., ¶¶ 15, 21. Prior to June 1997, the Mr. Smiley Mark was an indicator of source for Wal-Mart stores. *Id*., ¶ 18.

On June 3, 1997[3], Plaintiff Loufrani filed an intent-to-use application (Serial No. 75/302,439) ("'439 Application") with the USPTO to register its SMILEY and Design Mark, in 24 International Classes.[4] *Id*., ¶¶ 1, 22. On March 28, 1998, Plaintiff requested that the USPTO divide the application into two, with the original application containing goods and services in International Classes 16, 25, 28, 29, 30, 41 and 42, and the second application (Serial No. 75/977,376) ("'376 Application") containing goods and services in International Classes 3, 5, 8, 9, 14, 18, 21, 24, 31-36, 38 and 39. *Id.* Plaintiff's applications asserted Loufrani's intent-to-use the Smiley and Design Mark in connection with a variety of products, some of which overlap with products Defendant sells in its stores. *Id*., ¶ 24. On May 22, 2001, Loufrani's '376 Application was published for opposition, and Wal-Mart filed a Notice of Opposition on September 17, 2001, alleging that the Smiley and Design Mark was a ubiquitous icon that could not function as a trademark and, alternatively, because a happy face design could potentially

---

[3] In paragraph 22 of its Counterclaim, Defendant alleges that Loufrani filed an intent-to-use application on June 3, 2007. We believe this is a typographical error, as the actual date of filing is June 3, 1997.

[4] The Wal-Mart Mark:  , and Plaintiff's SMILEY and Design Mark                                      .

3

function as a trademark upon a showing of secondary meaning, Wal-Mart had achieved secondary meaning through its continuous use of the Mr. Smiley Mark. *Id.*, ¶ 26. On January 6, 2003, Defendant filed a Notice of Opposition against the '439 Application. *Id.*, ¶ 27.

On October 3, 2001, Defendant filed an application (Ser. No. 76/320,301) ("'301 Application") to register its Mr. Smiley Mark in International Class 35 for retail store operations. The mark was published for opposition on March 5, 2002, and Loufrani filed a Notice of Opposition to the '301 Application on May 22, 2002. *Id.*, ¶ 28. The TTAB consolidated the oppositions on January 8, 2003. *Id.*, ¶ 29. During the pendency of the oppositions, the parties engaged in oral and written discovery which culminated in oral arguments before the TTAB on January 14, 2009. *Id.*, ¶ 30. The TTAB issued its written opinion on March 20, 2009. The TTAB sustained Wal-Mart's oppositions and dismissed Loufrani's opposition. *Id.*, ¶ 31. The TTAB found that Defendant's Mark had achieved distinctiveness through secondary meaning and allowed the Mr. Smiley Mark to proceed to registration on July 7, 2009. *Id.*, ¶¶ 31, 34, 45. The TTAB further found that Loufrani's use of happy face would create a likelihood of confusion with the Mr. Smiley Mark. ¶ 35.

### IV. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. *Triad Associates, Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, a court must construe the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be accepted as true. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Nevertheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the

4

cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff must "show that it is plausible, rather than merely speculative, that he is entitled to relief." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) ("surviving a Rule 12(b)(6) motion requires more than labels and conclusions," the allegations must "raise a right to relief above the speculative level") *citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007). In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim. *McCready v. eBay, Inc.,* 453 F.3d 882, 888 (7th Cir. 2006).

It is black-letter law that in order to sustain a declaratory judgment claim, a plaintiff must show there is an actual case or controversy. 28 U.S.C. § 2201(a); U.S. CONST. art. III, § 2; *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007); *Villasenor v Am. Signature, Inc.*, 2007 U.S. Dist. LEXIS 49299, at *18 (N.D. Ill. July 9, 2007). If a matter is not ripe, then "the courts have no business deciding it, or expounding the law in the course of doing so." *Hinrichs v. Speaker of the House of Representatives*, 506 F.3d 584, 600 (7th Cir. 2007) (noting that Article III imposes the rule against advisory opinions in federal courts).

While it is true that in a motion to dismiss, courts generally must accept factual allegations in a complaint or counterclaim to be true, a court does not have to take a plaintiff's bald allegations as true if the facts do not reveal an actual case or controversy. *Hope v. County of DuPage*, 738 F.2d 797, 808 (7th Cir. 1984); *Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981) (legal conclusions alleged in a complaint are not binding on the court); *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1215 (7th Cir. 1980) (noting in patent case where plaintiff alleged a justiciable controversy existed, "where there is no actual manufacture, use, or sale and no immediate intention and ability to practice the invention, there is no justiciable controversy" and vacating lower court's denial of defendant's motion to dismiss); *Chavez v.*

5

*Illinois State Police*, 1999 U.S. Dist. LEXIS 11976, at *10-11 (N.D. Ill. Aug. 2, 1999) (holding that in a motion to dismiss, if factual allegations in the complaint are conclusory, the court may disregard them); *Merrill Lynch Business Fin. Servs. v. Marais*, 1995 U.S. Dist. LEXIS 15106, at *22 (holding that plaintiff's legal conclusions in a motion to dismiss were not binding on the court).

## V. ARGUMENT

### A. Counts II-VI Should Be Dismissed Because There Is No Actual Case or Controversy

In federal trademark practice, a party who has a *bona fide* intent to use a particular mark may file an intent-to-use application for particular goods/services, which serves as a placeholder until the party is ready to bring its goods/services to market. *Warnervision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 260 (2d Cir. 1996); *Geisha LLC v. Tuccillo*, 2009 U.S. Dist. LEXIS 20300, at *4-5 (N.D. Ill. Mar. 13, 2009). If the application is allowed and the party later begins to use the mark in commerce, the party then benefits from the earlier intent-to-use application because the date of first use is construed to be the date of the filing of the intent-to-use application. In this longstanding matter, Plaintiffs have asserted an intent-to-use the mark, but there is no allegation that they have actually used the SMILEY and Design Mark in the United States.

A court in this district has ruled in a case very similar to the case at bar that there was no case or controversy where defendant had filed an intent-to-use application but did not take concrete steps that would infringe the plantiff's mark. *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1018 (N.D. Ill. 2007). In *Geisha, LLC v. Tuccillo*, plaintiffs operated a restaurant in Chicago called "Japonais" and commissioned an advertising firm to create a unique design for it. *Id*. at 1004. Plaintiff used the design in advertisements but did not file an application for

6

registration with the USPTO. *Id*. at 1005. Less than a year after the Chicago restaurant opened, the defendant filed an intent-to-use application for a stylized version of the word "Japonais" for use in connection with "restaurant and lounge services." *Id*. at 1006. The defendant's mark was "virtually identical" to the plaintiff's mark. *Id*. at 1006. The United States Patent and Trademark Office issued a Notice of Allowance for the mark in 2005. *Id*. at 1006. After the success of the Chicago restaurant, the plaintiff planned to open "Japonais" restaurants in New York and Las Vegas. *Id*. at 1005. The plaintiff learned about the defendant's mark after the opposition period had expired and sought a declaratory judgment order that the defendant's intended use of the mark would constitute trademark infringement. *Id*. at 1004, 1007.

Judge Rebecca Pallmeyer held that there was no actual, real and immediate controversy at the time the plaintiff filed its complaint requesting declaratory relief. *Geisha*, 525 F. Supp. 2d at 1015. The court adopted the Supreme Court's test articulated in *MedImmune*, which considers:

> whether, under all the circumstances, a definite and concrete controversy exists between parties having adverse legal interests, the controversy must be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, such that a declaration would not simply amount to an opinion advising what the law would be upon a hypothetical state of facts.

*Id*. at *1013. Although the defendant had expressed a "firm intent" to use the name and mark in connection with a restaurant in his intent-to-use application, very few actual preparations had been made to open such a restaurant. *Id*. at 1015. Thus, the court held that the defendant's "allegedly infringing activity lacks sufficient immediacy and reality" and that any declaration by the court would amount to an impermissible advisory opinion. *Id*. at 1018.

Similarly, Wal-Mart seeks an advisory opinion from the Court that any use by Plaintiff of the SMILEY and Design Mark *would be* an infringement. Counterclaim, ¶¶ 46, 50, 52, 53, 56,

57, 60, 61, 64, 67, 68, 72, 73, 76, 79, 80, 83, 84, 87, 88, 91, 92 and 94. Like the Defendant in *Geisha*, Plaintiffs here have simply filed intent-to-use applications for the SMILEY and Design Mark, and Defendant makes no allegation that Plaintiffs have actually used the SMILEY and Design Mark in commerce in the United States. Wal-Mart's counterclaim is void of any allegations of Plaintiffs' actual use of the mark. The Court is being asked to adjudicate a case that is not ripe, as there is no actual case or controversy because there is no actual use. Any alleged violation by Plaintiffs is hypothetical. Accordingly, the Court should dismiss Counts II through VI of the Counterclaim with prejudice.

> **B.     A Likelihood of Confusion Finding By the TTAB In the Context of Trademark Registration Is Not Tantamount to a Finding of Infringement in the Field**

Simply because the TTAB found a likelihood of confusion in its review of Plaintiffs' application for federal registration, this Court should not extend this limited finding to a broader declaration of trademark infringement in a court of law. The TTAB, an administrative tribunal, considers the issue of likelihood of confusion very narrowly, i.e., for purposes of registration only. In its Counterclaim, Defendant is asking the Court to expand this narrow finding and to determine hypothetically whether any future use of the mark in a broad swath of goods and services would constitute trademark infringement and various related business torts. Not only is this an impermissible request for an advisory opinion, it is an improper extension of the TTAB's findings in the limited context of trademark registration. *Rosenruist-Gestao E Servicos LDA v. Virgin Enter. Ltd.*, 511 F.3d 437, 443 (4th Cir. 2007) (noting that under 15 U.S.C.A. §§ 1067, 1068 the TTAB, "as an administrative tribunal of limited jurisdiction … is empowered only to decide whether a given trademark is registrable").

### C.     Defendant Fails To State a Claim For Consumer Fraud in Count VI

Count VI of Defendant's Counterclaim, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, should be dismissed because Defendant has failed to allege actual damages as required under the Act.  The Consumer Fraud Act "provides a private cause of action only where a plaintiff can show that he suffered damage as a result of unlawful conduct proscribed by the statute."  *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 859, 658 N.E.2d 1325, 1337 (1st Dist. 1995).  *See also Langendorf v. Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1022 (N.D. Ill. 2008) ("To state a claim under the ICFA, the plaintiff must allege … actual damages proximately caused by the deception."); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008) ("Because actual damages is an element of the claim, plaintiff must allege that she has been harmed in a concrete, ascertainable way.  Therefore, defendants' alleged deception must have affected plaintiff in a way that made her tangibly worse off. Theoretical harm is insufficient.  Damages may not be predicated on mere speculation, hypothesis, conjecture or whim.").

Defendant's Counterclaim does not contain any allegations that Defendant suffered any monetizable loss as a result of Plaintiffs' conduct.  The Counterclaim merely alleges that *if* Plaintiffs were to use the SMILEY and Design Mark, it *would* cause confusion among the public and would constitute unfair competition under Illinois law.  Counterclaim, ¶¶ 91, 92.  Defendant has not alleged that Plaintiffs have used the SMILEY and Design Mark in the United States.  Such hypothetical allegations do not constitute actual damages.  Thus, Defendant's claim under the Consumer Fraud Act is fatally deficient.  *See Frye*, 583 F. Supp. 2d at 957-58 (dismissing plaintiff's Consumer Fraud Act claim where plaintiff failed to allege that defendant's actions

9

"had any observable economic consequences"). Accordingly, the Court should dismiss Count VI of the Counterclaim.

## VI. CONCLUSION

For the reasons set forth herein, Plaintiffs/Counter-Defendants, Franklin Loufrani and The Smiley Company SPRL, request that the Court dismiss Counts II through VI of Defendant/Counter-Plaintiff Wal-Mart Stores, Inc.'s Counterclaim with prejudice, and for any further relief the Court deems proper.

Respectfully submitted,

**FRANKLIN LOUFRANI and THE SMILEY COMPANY SPRL**

By: /s/ Steven L. Baron
   One of their attorneys

Dated: September 2, 2009

Steven L. Baron (#6200868)
Natalie A. Harris (#6272361)
Lindsay H. LaVine (#6291725)
MANDELL MENKES LLC
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
(312) 251-1000 (phone)
(312) 251-1010 (fax)

*Counsel for Plaintiffs/Counter-Defendants*