**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRANKLIN LOUFRANI, an individual, and THE SMILEY COMPANY SPRL, a Belgian Company, | ) ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | Case No. 09 CV 3062 |
| v. | ) ) | Judge Virginia M. Kendall |
| WAL-MART STORES, INC. | ) ) | Magistrate Geraldine Soat Brown |
| Defendant/Counter-Plaintiff. | ) ) | |

**PLAINTIFFS/COUNTER-DEFENDANTS FRANKLIN LOUFRANI & THE SMILEY COMPANY SPRL'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS II-VI OF DEFENDANT/COUNTER-PLAINTIFF WAL-MART STORES, INC.'S COUNTERCLAIMS**

**INTRODUCTION**

In its response, Wal-Mart attempts to obscure the core concern Plaintiffs raised in their motion, namely that Wal-Mart is attempting to obtain an advisory opinion from the Court about whether Wal-Mart would prevail on trademark infringement claims if Plaintiffs began to use the subject trademarks in commerce. Litigants are not entitled to such advisory opinions, and courts should refrain from giving them. Neither the cases Wal-Mart cites nor the factual underpinnings of its counterclaim give rise to a ripe case or controversy. Accordingly, the Court should grant Plaintiff's motion to dismiss Counts II-VI of the Counterclaim.

**ARGUMENT**

A. **Wal-Mart Has Failed To Allege an Actual Case or Controversy Exists**

Wal-Mart concedes, as it must, that the operative factual allegations of its counterclaim are stated in the conditional form. (Wal-Mart Response, Docket No. 30, herein, "Response," p.

5.) Rather than alleging that Plaintiffs *have used* or licensed the Smiley Face Design, Wal-Mart alleges that Plaintiffs' "use and/or licensing . . . *would* constitute, and *if used* has constituted… infringement…." (Count I, Cntrclm. ¶ 43; *see also,* ¶¶ 57, 67, 79 and 87)(emphasis supplied). Based on these artfully plead allegations, Wal-Mart asks the Court to declare that it will prevail on such claims in the future if and when Plaintiffs begin to use the Smiley Face Design in the future.

In its response, Wal-Mart argues that actual use is not required to support claims seeking a declaration of infringement. (Response, pp. 7-10.) The cases Wal-Mart cites, however, are inapposite or readily distinguishable.[1] For example, *Medimmune v. Genentech, Inc*. involved the licensing of a patent and had nothing whatsoever to do with an intent-to-use application for a trademark. 549 U.S. 118, 120 (2007). Unlike *Medimmune*, Plaintiffs have not sent a cease and desist letter or threatened an infringement action against Wal-Mart for its use of the Mr. Smiley Mark. Wal-Mart makes no allegations that it was coerced or otherwise forced to act in order to avoid draconian measures taken against it, nor is Wal-Mart faced with the dilemma of either abandoning its rights or facing prosecution as Medimmune did. Finally, unlike the parties in *Medimmune*, Plaintiffs and Wal-Mart do not have any contractual obligations to the other.

In *Young v. Vannerson,* (Response, pp. 7-8), the plaintiffs filed claims alleging fraud, unfair competition and tortious interference with a business relationship after defendants filed intent-to-use applications featuring Plaintiff, a professional football player's, name and likeness without his consent. 612 F. Supp. 2d 829, 836 (S.D. Tex. 2009). Defendant admitted that he had created prototypes of the products for licensing, developed marketing strategies with external organizations and performed market tests with the marks. *Id*. at 836. Plaintiffs asserted that

---

[1] Wal-Mart devotes a great deal of its response citing cases from the Second Circuit, Ninth Circuit, the Southern District of New York, the Southern District of Texas, and the Eastern District of Michigan to support its claims, all of which are non-binding on this Court.

"they reasonably believe[d] the defendants w[ould] sue them if they continue to use the VY and INVINCEABLE Marks in their own products and endorsements" and alleged that they lost endorsements because defendants created fear that they would sue for infringement. *Id*. at 838.

In contrast, in this case, other than stating that Plaintiffs filed an intent-to-use application, Wal-Mart has not cited to the TTAB record nor made any other allegations that Plaintiffs made any meaningful preparation to use the mark. Moreover, Wal-Mart has not asserted that it fears that Plaintiffs will sue it if it continues to use the Mr. Smiley Mark. Thus, the matter is clearly not ripe for decision.

*AARP v. 200 Kelsey Associates, Inc.*, 2009 US. Dist. LEXIS 969 (S.D.N.Y. Jan. 6, 2009) (Response, p. 9) involved a dispute over the use of the trademark MODERN MATURITY. In that case, the plaintiff alleged that the defendant, in preparation for the launch of a magazine bearing the same name and mark as AARP's flagship publication, contacted potential publishers, generated written business plans concerning the design and sale of the magazine, and engaged in extensive market analysis. *Id.* at *3. The court held that defendant had undertaken sufficient steps in its marketing of the magazine to create an actual controversy. *Id*. at *28. It reasoned that although defendant had not secured a licensing partner to undertake publication of the magazine, such a step occurs only after a party has "made a number of concrete decisions concerning the proposed content, design, and layout of the magazine. Thus, once a licensing partner is identified, little will remain for defendants to do other than commence production, distribution and sale of the magazine." *Id*. The court also noted that defendants' responses to plaintiff's document requests added credence to plaintiff's claim that defendants had taken concrete steps to publish the magazine. *Id*. at *28-29.

3

Unlike the plaintiff in *AARP*, Wal-Mart has failed to allege that Plaintiffs have undertaken significant steps that would render use of the applied for mark imminent. It is notable that during the many years that the TTAB proceedings were active, the parties undertook significant discovery, and yet Wal-Mart references no evidence from the existing record to demonstrate *any* steps that Plaintiffs have taken to advance the use of the subject mark.

In its response, Wal-Mart claims that the mere fact that Plaintiffs have successfully operated a licensing business in countries outside of the United States means that Plaintiffs engaged in "meaningful preparation." (Response, p. 10.) Wal-Mart further claims that the fact that "Plaintiffs' stated bona fide intent to use and/or license the Loufrani Smiley Face Design…and their ability and preparations to implement this intent" is sufficient to state a live claim. (*Id*. at p. 3.) This is mere conjecture on Wal-Mart's part and is insufficient to withstand a motion to dismiss.

Wal-Mart attempts to distinguish *Geisha, LLC v. Tuccillo*, on the grounds that it was decided on a motion for summary judgment, after extensive discovery, as opposed to on a motion to dismiss. (Response, pp. 10-12.) Yet, Wal-Mart alleges in its own counterclaim that extensive discovery was exchanged during the TTAB proceedings, dating back to 2001, (Wal-Mart Counterclaim, Docket No. 15, ¶¶ 26, 30). In this instance, the procedural posture of the case is a distinction without a difference. Wal-Mart had years to develop its record of Plaintiffs' efforts to prepare to use the mark, and it cannot now assert that it is handcuffed by the absence of discovery.[2]

Wal-Mart also attempts to distinguish *Geisha* on the facts. Wal-Mart states that in *Geisha*, the applicant's steps toward opening a restaurant were "of little consequence" and "d[id]

---

[2] Tellingly and ironically, in the TTAB proceeding, rather than claiming that Plaintiffs were meaningfully preparing to use the applied for marks, Wal-Mart attempted to plead, unsuccessfully, that Plaintiffs lacked a *bona fide* intent to use the mark. *See*, Interlocutory Order of July 21, 2007 attached hereto as Exhibit A.

4

not appear either serious or advanced." (Response, pp. 11-12, citing *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1015 (N.D. Ill. 2007)). Wal-Mart argues that the defendant's steps consisted "only of playing around with a menu and searching for a suitable location," which it concedes is not "serious" or "advanced" preparation. (Response, p. 11.)

Then, instead of referring to any of its own allegations or discovery from the TTAB, Wal-Mart cites to Plaintiffs' allegations that they own trademark registrations for other marks, such as the word mark SMILEY, have used and licensed that mark and other marks similar to the Loufrani Smiley Face Design and have promoted their licensing business in the United States. (Response, pp. 5, 12.) In effect, Wal-Mart asks the Court to make a speculative leap of faith that Plaintiffs' conduct in connection with *other* trademarks should be imputed as preparation and ability to use the applied for mark. The *Geisha* decision does not support this position.

In fact, the *Geisha* court concluded that "no actual controversy exist[ed] to support the exercise of jurisdiction under the Declaratory Judgment Act." *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d at 1018. It further reasoned that "because Tuccillo's allegedly infringing activity lacks 'sufficient immediacy and reality,' any such declaration would amount to little more than an improper 'opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* The same holds true here.

### B. This Court Does Not Have Jurisdiction to Hear Wal-Mart's Infringement Claims Because There Has Been No Infringement.

Plaintiffs do not take issue with Wal-Mart's general right to assert counterclaims or this Court's jurisdiction over such counterclaims.[3] Rather, Plaintiffs assert that if Wal-Mart asks this Court to make a finding of infringement, there must first be a justiciable controversy.

---

[3] Plaintiffs do, however, disagree with Wal-Mart (Response, p. 12) that Section 21(b)(1) of the Lanham Act contains any express language that grants Wal-Mart permission to assert counterclaims. *See* 15 U.S.C. § 1071(b)(1).

5

Wal-Mart's citation to *Wells Fargo & Co. v. Stagecoach Properties,* 685 F.2d 302, 309, n. 8 (9th Cir. 1982) is inapt. That case does not stand for the proposition that a party who opposed an intent-to-use application in the Trademark Office, based in part on likelihood of confusion, can extend the finding by asking the United States District Court to declare hypothetical infringement based on the same intent-to-use application.

Similarly, the amount of weight given to the Patent & Trademark Office's refusal to register a mark is of no moment to the question at hand. (Response, p. 13, *citing Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566 (2d Cir. 1971)). Regardless of the TTAB's finding of likelihood of confusion on an intent-to-use application, Wal-Mart cannot ask the Court to reach out to declare infringement where no appreciable use of the mark, other than an expression of intent, has occurred.

### C. Wal-Mart Has Not Adequately Pled its Consumer Fraud Claim

Wal-Mart appears to concede that, among other things, in order to state a claim under the Consumer Fraud Act, it must assert that it suffered "actual damages." (Response, p. 13; *see also*, *Villasenor v. American Signature, Inc*. 2007 U.S. Dist. LEXIS 49299, * 12 (J. Kendall, Jul. 9, 2007), attached hereto as Exhibit B). In a contortion of logic, Wal-Mart claims that it need not allege actual damages because, like its other claims, Wal-Mart merely "seeks a declaration that Plaintiffs' use of the Loufrani Smiley Face Design would constitute a violation of the CFA and that Wal-Mart would be damaged by Plaintiffs' use." (Response, p. 13.) If any party alleging a claim under the Consumer Fraud Act could avoid pleading the critical element of damages by recasting its claim as one for declaratory relief, the courts would be flooded with litigants seeking guidance on hypothetical claims. Like the other counts, Count VI is an impermissible request for an advisory opinion and should be dismissed.

## CONCLUSION

For the reasons stated herein, and in their initial memorandum, Franklin Loufrani and The Smiley Company SPRL respectfully request that this Court enter an order dismissing Counts II-VI of Wal-Mart Stores, Inc.'s Counterclaim with prejudice.

                                      Respectfully submitted,

                                      **FRANKLIN LOUFRANI and THE SMILEY COMPANY SPRL**

Dated: September 30, 2009            By: /s/Steven L. Baron
                                                  One of their attorneys

Steven L. Baron (#6200868)
Natalie A. Harris (#6272361)
Lindsay H. LaVine (#6291725)
MANDELL MENKES LLC
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
Tel: (312) 251-1000

*Counsel for Plaintiffs/Counter-Defendants*