# EXHIBIT B



2 of 7 DOCUMENTS



Analysis
As of: Sep 30, 2009

JOSE VILLASENOR, on behalf of himself and the classes defined herein, Plaintiff,
v. AMERICAN SIGNATURE, INC. d/b/a VALUE CITY FURNITURE; WORLD
FINANCIAL NETWORK NATIONAL BANK; and ALLIANCE DATA SYSTEMS
CORPORATION, Defendants.

Case No. 06 C 5493

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

2007 U.S. Dist. LEXIS 49299

July 9, 2007, Decided
July 9, 2007, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Dismissed by *Villasenor v. Am. Signature, Inc.*, 2008 U.S. Dist. LEXIS 32457 (N.D. Ill., Mar. 31, 2008)

**COUNSEL:** [*1] For Jose Villasenor, on behalf of himself and the classes defined herein, Plaintiff: Daniel A. Edelman, LEAD ATTORNEY, Cathleen M. Combs, James O. Latturner, Jeremy Patrick Monteiro, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For American Signature, Inc., doing business as Value City Furniture, Defendant: Craig Allen Varga, Jonathan N. Ledsky, Scott J Helfand, Varga, Berger, Ledsky, Hayes & Casey, Chicago, IL; James E. Phillips, Robert Neal Webner, Vorys, Sater, Seymour & Pease LLP, Columbus, OH.

For World Financial Network National Bank, Defendant: James Dominick Adducci, LEAD ATTORNEY, Marshall Lee Blankenship, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL; Alan S Kaplinsky, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA; Jeremy T Rosenblum, Ballard Spahr Andrews & Ingersoll, LLC, Philadelphia, PA.

For Alliance Data Systems Corporation, Defendant: James Dominick Adducci, LEAD ATTORNEY, Marshall Lee Blankenship, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL.

**JUDGES:** Virginia M. Kendall, United States District Judge.

**OPINION BY:** Virginia M. Kendall

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Villasenor ("Villasenor" or "Plaintiff") has filed a five-count [*2] Amended Complaint against American Signature, Inc. d/b/a Value City Furniture ("VCF"), World Financial Network National Bank (the "Bank") and Alliance Data Systems Corporation ("ADS," and together with the Bank and VCF, "Defendants"). Each of Villasenor's claims relates to an allegedly deceptive and misleading sales promotion called the "Real Deal." Villasenor alleges that Defendants affirmatively misrepresented that they were offering interest-free financing on furniture purchases until 2011 and then surreptitiously switched consumers to financing arrangements involving the payment of interest. Before the Court are (1) the joint Motion to Dismiss filed by the Bank and ADS; and (2) VCF's separate Motion to Dismiss. For the reasons set forth in this Memorandum

Opinion and Order, Defendants' Motions to Dismiss are granted in part and denied in part.

**Plaintiff's Factual Allegations**

In the fall of 2006, Villasenor visited a VCF store located at 8310 S. Cicero Avenue in Burbank, Illinois after he observed a sign in the window of that store advertising "no interest til 2011." (Am. Cplt. P 16.) The sign advertised a program that VCF called the "Real Deal," which program was widely promoted [*3] by VCF and was designed and implemented jointly by Defendants. Similar signs were placed conspicuously in all other VCF stores.

On September 27, 2006, Villasenor purchased a dinette set, a loveseat, two tables, a bedroom set, and a TV cart at a VCF store. Villasenor opened a private label VCF credit card account and charged his purchase to that account. Both ADS and the Bank assist VCF in providing such private label credit cards to VCF customers, which cards are branded with VCF's name and logo and can be used only at VCF stores or affiliated stores. VCF acts as the agent of the Bank with respect to the private label credit card program; it invites consumers to apply for credit and takes applications for the cards on behalf of the Bank. VCF also delivers required disclosures related to the cards on behalf of the Bank and, in doing so, acts upon the Bank's instructions. For its part, ADS provides VCF with certain services related to the cards, including account acquisition and activation, receivables funding, card authorization, card issuance, statement generation, remittance processing, customer service functions, and marketing services.

The credit card agreement for Villasenor's VCF [*4] credit card account provides that, "[i]f a promotional Credit Plan is offered at the time you open your credit card account, this Agreement will include information about the terms for the [promotional] Plan (which may include . . . the ANNUAL PERCENTAGE RATE . . .) by use of an insert, attachment, or other written information provided as part of or with this Agreement." Id. at P 24 and Exh. D thereto. The credit card agreement further provides that the "Agreement is governed by Ohio and applicable federal law."

VCF provided Villasenor with an "insert, attachment, or other written information" regarding the Real Deal promotion in the form of a glossy red, white and black booklet (the "Booklet"). Id. at P 25 and Exh. E thereto. The Booklet provides, in pertinent part, that:

> No interest charges apply on promotional credit plan purchases if the balance is paid in full before the promotional period ends (20, 30, 40, 50, or 60 months from the date of purchase, depending upon the plan you enrolled in). If the promotional credit-plan is not paid in full before the promotional period ends, the remaining balance plus interest will be included in your regular revolving balance and regular credit [*5] terms apply.

Id. at P 29 and Exh. E thereto. Upon completing his furniture purchase, VCF provided Villasenor with a cash register receipt indicating that the terms of his purchase were "50 month plan / no intere[st]." However, the cash register receipt also provides a "supplemental disclosure" for the Real Deal promotion that states:

> The Real Deal offers customers a choice of paying for merchandise in one of several ways: (1) cash/check/bank charge/3 or 5 month payment plan ("Cash Plan"); (2) twenty month payment plane ("20 Month plan"); (3) thirty month payment plan ("30 Month Plan"); (4) forty month payment plan ("40 Month Plan"); (5) fifty month payment plan ("50 Month Plan"); and (6) sixty month payment plan ("60 Month Plan")
>
> Customers who select the 50 Month Plan will pay a price that is $ 704.64 greater than the price paid by customers who select the Cash Plan. This difference is a FINANCE CHARGE. The ANNUAL PERCENTAGE RATE of the FINANCE CHARGE is 10.540%

Id. at P 30 and Exh. F thereto.

Villasenor alleges on information and belief that the Bank and/or ADS are paid a percentage of all sales charged on a VCF credit card. The Bank and ADS refer to these percentages as a "merchant discount." [*6] VCF passes onto consumers some or all of the burden of paying the "merchant discount" to the Bank and ADS by charging more for goods in VCF credit card transactions than it does for the same goods in cash transactions.

**Discussion**

**I. Standard.**

"A motion to dismiss under *Rule 12(b)(6)* challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera, 272 F.3d 519, 520-21 (7th Cir. 2001)*. In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and must view the allegations in

the light most favorable to plaintiffs. *See, e.g., Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 597 (7th Cir. 2004)*. To survive a motion to dismiss, a complaint must set forth facts sufficient to establish a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)* ("While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations . . . [there] must be enough to raise a right to relief above the speculative level."). In other words, "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." *Id. at 1969, n.8* [*7] (citing *Leimer v. State Mut. Life Assur. Co., 108 F.2d 302, 305 (8th Cir. 1940)*). "It is not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged." *Id.* (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)*).

## I. Plaintiff's Truth In Lending Act Claim Against The Bank.

The first count of Plaintiff's Complaint is a claim for violation of the Truth in Lending Act, *15 U.S.C. § 1601, et seq.* ("TILA"), which claim is asserted against the Bank only. Plaintiff seeks both statutory and actual damages from the bank for its failure to disclose the increased price of goods purchased on "no interest" plans as a finance charge and its failure to disclose such finance charge as an annual percentage rate, but instead falsely stating that such plans involved no interest.

A. Villasenor Has Adequately Pleaded a Claim for Statutory Damages.

Section 1640(a) of TILA, *15 U.S.C. § 1640(a)*, authorizes private rights of action for statutory damages against creditors who violate certain enumerated TILA disclosure requirements. The Bank reads the Complaint to plead a violation of Section 1632(a) of TILA, *15 U.S.C. § 1632(a)*, which requires that "[i]nformation [*8] required by [TILA] shall be disclosed clearly and conspicuously, in accordance with regulations of the Board." The Bank then argues that Villasenor's Complaint does not give rise to a valid claim for statutory damages under TILA because Section 1632(a) of TILA is not referenced in *Section 1640(a)*. See *Brown v. Payday Check Advance, Inc., 202 F.3d 987, 991-92 (7th Cir. 2000)* ("*Section 1640(a)* says that statutory damages are available 'only' for violations of enumerated subsections and rules. *Section 1632(a)* is not on that list.").

But *15 U.S.C. § 1637(a) is* on the list set forth in *Section 1640(a)* and it requires creditors to disclose to the person to whom credit is to be extended the "conditions under which a finance charge may be imposed" *before* opening any account. Villasenor notes that the Booklet represents that "[n]o interest charges apply on promotional credit plan purchases if the balance is paid in full before the promotional period ends" and that the credit agreement for his VCF credit card account provides that "[i]f you make a purchase under any of the following Promotional Credit Plans . . . we will not charge Finance Charges on the purchase if you pay the total amount of [*9] the purchase before the end of the promotional period." Taking the allegations in the Complaint as true, Villasenor has alleged that the disclosures he received *before* opening his VCF account promised that there would be no interest or finance charges associated with his furniture purchase so long as he paid off the balance in full before the end of the promotional period. He argues that those disclosures were "blatant lies" because a finance charge was added to his purchase at the time of purchase and not because he failed to pay off his balance before the end of the promotional period.

This Court is mindful of the fact that the "limited office [of TILA] is to protect consumers from being misled about the cost of credit." *Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir. 1997)*. In this case, Villasenor has pleaded that the disclosures he received were misleading as to the cost of the credit that was extended to him. The Court finds that the Complaint establishes a plausible entitlement to statutory damages inasmuch as it alleges that the disclosures Villasenor received before opening his account did not advise him that a finance charge might be imposed at the time [*10] of purchase and, as such, failed to advise him of the conditions under which a finance charge might be imposed in violation of *Section 1637(a)*. Accordingly, the Bank's Motion to Dismiss Villasenor's claim for statutory damages is denied.

B. Villasenor's Claim for Actual Damages is Dismissed.

In order to state a claim for actual damages under TILA, a plaintiff must demonstrate detrimental reliance upon an inaccurate or incomplete disclosure. *Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001)* ("We find that plaintiffs must demonstrate detrimental reliance in order to be entitled to actual damages under TILA . . . 'To recover actual damages, consumers must show that they suffered a loss because they relied on an inaccurate or incomplete disclosure.'") (quoting H.R. Rep. No. 193, 104, 104th Cong., 1st Sess. (1995)); *see also Gold Country Lenders v. Smith, 289 F.3d 1155 (9th Cir. 2002); Perrone v. GMAC, 232 F.3d 433, 436 (5th Cir. 2000); Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 917 (8th Cir. 2000)*. Villasenor has not alleged any facts that suggest detrimental reliance. Specifically, Villasenor has not alleged that he would have sought a [*11] lower price but for the allegedly inaccurate TILA disclosure or that he would have been able to obtain a lower price. *Perrone, 232 F.3d at 436* ("Actual damage

is thus sustained as a result of [a TILA disclosure violation] if a consumer can show that, had he been properly informed, he would have engaged in a different or less-expensive transaction."). While this Court is obliged, at this stage, to view the allegations in the Complaint in the light most favorable to Villasenor, it would be improper for the Court to assume that he could prove detrimental reliance without having alleged facts that, at the very least, suggest that he would have sought and obtained a lower price but for the allegedly inaccurate TILA disclosure. *Bell Atlantic Corp., 127 S. Ct. At 1969 n.8*. Accordingly, Villasenor's claim under TILA for actual damages is dismissed.

## II. Plaintiff's Illinois Consumer Fraud Act Claim Against All Defendants.

Villasenor also brings a cause of action against all defendants under *Section 2* of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). To state a private cause of action for practices proscribed by *Section 2 of the ICFA*, "a plaintiff must establish: [*12] (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill.2d 100, 180, 835 N.E.2d 801, 296 Ill. Dec. 448 (2005)* (citing *Oliveira v. Amoco Oil Co., 201 Ill.2d 134, 149, 776 N.E.2d 151, 267 Ill. Dec. 14 (2002))*. To properly allege the element of proximate causation in a private cause of action brought under the ICFA, "a plaintiff must allege that he was, in some manner, deceived." *Oliveira, 201 Ill.2d at 155*; see also *Avery, 216 Ill.2d at 200* ("it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation."). "In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana v. Coca-Cola Co., 472 F.3d 506, 513-14 (7th Cir. 2006)* (citing *Oliveira, 201 Ill.2d at 155*). Accordingly, those "who 'knew the truth' do not have valid ICFA claims because they cannot claim to have been deceived." *Id. at 514* [*13] (citing *Oliveira, 201 Ill.2d at 155*).

In this case, Villasenor has not alleged that he was actually deceived. And it would be improper for this Court to assume that Villasenor could prove that he was actually deceived without having included that allegation in his Complaint. *Twombly, 127 S. Ct. 1969* at n.8 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983))*. Moreover, VCF argues that, beyond having failed to allege that he was actually deceived, Villasenor actually "knew the truth" because the finance charges were disclosed on the receipt he signed at the time he purchased his furniture. Villasenor concedes in the Complaint that the finance charges were "disclosed . . . on the register receipt." (Cplt. P 68). Under both Illinois and Ohio law, a party that signs an agreement is charged with knowledge of its contents whether or not the party actually read the entire agreement. *See Melena v. Anheuser-Busch, Inc., 219 Ill.2d 135, 150, 847 N.E.2d 99, 301 Ill. Dec. 440 (2006)* ("a party to an agreement is charged with knowledge of and assent to the agreement signed") (citing *Black v. Wabash, S. L. & P. R. Co., 111 Ill. 351, 358 (1884)* ("Where a party of mature years and sound [*14] mind, being able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement without informing himself as to the nature of its contents, he will nevertheless be bound, for in such case the law will not permit him to allege, as matter of defense, his ignorance of that which it was his duty to know, particularly where the means of information are within his immediate reach, and he neglects to avail himself of them.")); *Preferred Capital, Inc. v. Power Eng'g Group, Inc., 112 Ohio St. 3d 429, 432, 2007 Ohio 257, 860 N.E.2d 741 (2007)* ("parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed"). Accordingly, for his failure to allege that he was, in some way, actually deceived, Villasenor's claim under the ICFA is dismissed.

## III. Plaintiff's Declaratory Judgment Claim Against All Defendants Under the Illinois Retail Installment Sales Act.

Count II of the Complaint purports to allege a violation of the Illinois Retail Sales Act ("IRISA") which violation, according to Villasenor, prevents Defendants from recovering any finance charge in connection with his furniture purchase. [*15] Villasenor alleges that a declaratory judgment is therefore necessary to resolve a controversy between the parties "as to whether defendants are entitled to collect any finance charge, including the finance charge disclosed for the first time on the register receipt." (Cplt. P 68.) Defendants offer a barrage of arguments in favor of the dismissal of Villasenor's declaratory judgment claim, including that: (1) there is no private cause of action under IRISA; (2) Villasenor's purchase was not a retail installment transaction; (3) the contract provides for the application of Ohio law and no fundamental Illinois policy requires application of IRISA in spite of that choice; and (4) the National Bank Act preempts IRISA insofar as it would otherwise apply to the Bank. The Court need not undertake to address each of these arguments because the first is dispositive.

2007 U.S. Dist. LEXIS 49299, *

There is no private right of action under IRISA. *Hoover v. May Dep't Stores Co., 77 Ill.2d 93, 102, 395 N.E.2d 541, 32 Ill. Dec. 311 (1979)*. "[P]rior to 1968, a buyer could maintain an action against the seller . . . for a failure to comply with the provisions of [IRISA]." *Id. at 101*. In 1967, the Illinois General Assembly enacted a new retail installment sales act, [*16] which specifically repealed the Retail Installment Sales Act of 1957. *Id. at 97*. "The repeal of the 1957 Retail Installment Sales Act, which contained a provision for private action, and the failure to include such a provision in the new act, are clear indications that the legislature intended that there be no right to maintain a private action for recovery under the new act." *Id. at 102*.

Villasenor concedes that there is no private right of action under IRISA, but argues that he may nevertheless proceed in an action under the Declaratory Judgment Act, *28 U.S.C. § 2201*. The purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit." *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C. V., 28 F.3d 572, 577 (7th Cir. 1994)* (citing *Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167 (7th Cir. 1969))*. But the Declaratory Judgment Act is not an independent source of federal jurisdiction. *Schilling v. Rogers, 363 U.S. 666, 677, 80 S. Ct. 1288, 4 L. Ed. 2d 1478 (1960)* (citing *Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950))*. The availability [*17] of declaratory relief "presupposes the existence of a judicially remediable right." *Id.* Where, as here, there is no private right of action available for an alleged statutory violation, a declaratory judgment claim cannot proceed. *See id.* (declaratory judgment action fails because there is no private right of action under the Trading with the Enemy Act); *see also Debartolo v. Healthsouth Corp., No. 06 C 2542, 2006 U.S. Dist. LEXIS 80288, * 13-14 (N.D. Ill. Oct. 17, 2006)* (because there is no private right of action under the Medicare anti-kickback statute, plaintiff may not continue with a declaratory judgment action because permitting plaintiff to continue with that claim "would be equivalent to allowing a private cause of action where one does not exist."); *Johnson v. Milwaukee County, No. 04-C-242, 2006 U.S. Dist. LEXIS 6892, *8, n.1 (E.D. Wis. Feb. 1, 2006)* ("Johnson's claim for declaratory judgment on his HIPAA claim cannot proceed [because there] is no private right of action under HIPAA."); *Williams v. Nat'l School of Health Tech., Inc., 836 F. Supp. 273, 281 (E.D. Pa. 1993)* ("there is no private right of action under the [Higher Education Assistance Act of 1965]. Allowing plaintiffs [*18] to proceed in a declaratory judgment action with the HEA as the source of the underlying substantive law is tantamount to allowing a private cause of action. The Declaratory Judgment Act cannot be used to circumvent the enforcement mechanism which Congress established."); *Walker v. Federal Land Bank of St. Louis, 726 F. Supp. 211, 217 (C.D. Ill. 1989)* ("no private right of action can be implied from the 1987 Act. Hence, we determine that we have no power to render any declaratory judgment, since no case or controversy exists over which we have jurisdiction."). Accordingly, Villasenor's declaratory judgment claim under IRISA is dismissed with prejudice.

## IV. Plaintiff's Unjust Enrichment Claim Against All Defendants.

Count IV of the Complaint alleges that the Defendants engaged in unjust and inequitable conduct by: (1) failing to disclose the finance charge; (2) failing to disclose such finance charge as part of the annual percentage rate; and (3) fraudulently misrepresenting that they were offering "No interest til 2011." (Am. Cplt. P 91.) But, "[b]ecause unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, [*19] the doctrine of unjust enrichment has no application.'" *People ex rel. Hartigan v. E & E Hauling, Inc., 153 Ill.2d 473, 497, 607 N.E.2d 165, 180 Ill. Dec. 271 (1992)* (quoting *La Throp v. Bell Fed. Sav. & Loan Ass'n, 68 Ill. 2d 375, 391, 370 N.E.2d 188, 12 Ill. Dec. 565 (1977))*. In this case, there is an express contract that sets forth the terms of the purchase, including the finance charge at issue in this case.[1] That contract governs the relationship between the parties and the doctrine of unjust enrichment has no application. Accordingly, Villasenor's unjust enrichment claim is dismissed.

> 1  The Complaint is far from clear as to which defendants are parties to any of the agreements at issue in this case. The Complaint certainly does not allege that ADS is a party to any agreement that might govern the relationship between it and Villasenor. However, Count IV still fails to state a claim against ADS because it does not set forth factual allegations sufficient to establish a plausible entitlement to relief as against ADS. The Complaint does not allege that ADS was obliged to make any disclosures under TILA or that ADS made any fraudulent misrepresentations. Nor does the Complaint allege that ADS receives any of the interest or finance charges collected [*20] on the transactions at issue in this case or that ADS stands in a position to collect any of those charges in the future. Accordingly, even though ADS is not a party to a contract that governs the relationship between it and Villasenor, the unjust enrichment claim must nevertheless be dismissed as against ADS.

Case: 1:09-cv-03062 Document #: 31-4 Filed: 09/30/09 Page 7 of 7 PageID #:212

Page 6
2007 U.S. Dist. LEXIS 49299, *

### V. Plaintiff's Breach of Contract Claim Against VCF and the Bank.

At Count V of the Complaint, Villasenor alleges that the Bank and VCF breached a contract by first promising that no interest would be applied to promotional plan purchases so long as the balance is paid in full before the promotional period ends and then imposing interest charges on those purchases by increasing the cost of the goods sold. Under Ohio law, "[a] party bringing a cause of action for breach of contract must demonstrate the following: (1) the existence of a binding contract or agreement; (2) that the non-breaching party performed its contractual obligations; (3) that the other party *failed to fulfill its contractual obligations* without legal excuse; and (4) that the non-breaching party suffered damages as a result of the breach." *McNulty v. PLS Acquisition Corp., Nos. 79025, 79125, 79195, 2002 Ohio 7220, 2002 Ohio App. LEXIS 7038, * 17 (Ohio Ct. App. Dec. 26, 2002)* [*21] (citing *Garofalo v. Chicago Title Ins. Co., 104 Ohio App. 3d 95, 108, 661 N.E.2d 218 (Ohio Ct. App. 1995))* (emphasis added). As such, a defendant in suit for breach of contract must be a party to the contract; that is to say, a party cannot fail to fulfill its contractual obligations without being a party to the contract in the first instance.

In this case, Villasenor asserts a breach of contract claim against VCF, but VCF is not a party to the contract alleged to have been breached. The promise allegedly breached -- the promise not to apply interest charges to purchases -- is a promise contained in the credit card agreement, which is a contract between Villasenor and the Bank. That is to say, it is a promise made by the Bank to Villasenor. Villasenor may not pursue a breach of contract claim against VCF based upon a contract to which VCF is not a party -- for the breach of a promise it did not make. *Id.* Accordingly, the breach of contract claim as against VCF must be dismissed.

The party that *did* make the promise not to charge interest -- the Bank -- is not the party alleged to have charged interest in breach of that promise. Villasenor alleges that the receipt he received from VCF advised that VCF, [*22] and not the Bank, included a finance charge in the purchase price of the furniture. In any event, the receipt that Villasenor received from VCF, which receipt Villasenor signed, constitutes a contract, whereby Villasenor agreed to pay the stated price for the furniture he purchased, which price included the finance charge that is the subject of this action. *See Commonwealth v. Sargent, 2003 PA Super 150, 823 A.2d 174, 176-77 (Pa. Super. Ct. 2003)* ("A credit card receipt is a signed sales receipt that evidences a contract for the sale of goods between the buyer and seller. When a person signs a credit card slip, they are creating a contract, a legal relationship, stating that they will pay the amount indicated on the slip."). Even if the finance charge added to the purchase price of Villasenor's furniture and reflected on the receipt he received from VCF were inconsistent with the terms of the credit card agreement between Villasenor and the Bank, it would appear that Villasenor consented to the payment of that finance charge -- notwithstanding any promise by the Bank or VCF or both that no such charges would be applied -- when he signed the credit card receipt for his purchase. *See Preferred Capital, Inc., 112 Ohio St. 3d at 432* [*23] ("parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed"). In the end, whatever else these allegations might amount to, they do not state a claim against either the Bank or VCF for breach of contract.

### Conclusion

For the reasons stated herein, the motions to dismiss are granted in part and denied in part. Villasenor may file a second amended complaint consistent with this Order within 21 days.

So ordered.

Virginia M. Kendall, United States District Judge

Northern District of Illinois

Date: July 9, 2007