IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANKLIN LOUFRANI, an individual, | ) | |
| and THE SMILEY COMPANY SPRL, | ) | |
| a Belgian Company, | ) | |
| | ) | Case No. 09 C 3062 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Franklin Loufrani and The Smiley Company SPRL (together "Smiley") filed suit against Defendant Wal-Mart Stores, Inc. ("Wal-Mart") seeking review of the Trademark Trial and Appeal Board's ("TTAB") final decision dismissing Smiley's opposition to Wal-Mart's trademark application. Wal-Mart subsequently filed a six-count Counterclaim. Pursuant to Fed. R. Civ. P. 12(b)(6), Smiley moves this court to dismiss Counts II through VI of Wal-Mart's Counterclaim. For the reasons stated below, Smiley's Motion to Dismiss is denied.

## BACKGROUND

The following facts are taken from Wal-Mart's Counterclaim and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Wal-Mart began using its Mr. Smiley Mark ("Wal-Mart Mark") as early as January 1996 in its print and television advertisements, including its well-known price rollback campaign. (Ctr. Clm ¶ 2.) Because Wal-Mart is one of the world's largest retailers and uses the Wal-Mart Mark so extensively in its ads and retail stores, the mark has become widely associated with the Wal-Mart company.

(Ctrclm. ¶¶ 12, 18.)  On June 3, 1997, Loufrani filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") to register his Loufrani Smiley Face Design ("Loufrani Mark").  (Ctrclm. ¶ 3.)  Loufrani's application described his intent to register the Loufrani Mark in connection with over a thousand goods and services in twenty-four separate international classes.  (Ctrclm. ¶¶ 3, 24.)  As such, Loufrani requested that the PTO divide his application into two parts, each corresponding to different classes of goods and services.  (Ctrclm. ¶ 22.)

On October 3, 2001, Wal-Mart filed an application with the PTO to register its Wal-Mart Mark for retail store operations.  (Ctrclm. ¶ 3.)  Wal-Mart and Loufrani subsequently filed oppositions to each other's applications, and the Trademark Trial and Appeal Board ("TTAB") consolidated these oppositions.  (Ctrclm. ¶ 4.)  On June 22, 2008, Loufrani purported to assign his applications to The Smiley Company SPRL while the opposition proceedings were still pending before the TTAB.  (Ctrclm. ¶ 23.)  On March 20, 2009, the TTAB issued its written determination that (1) the Wal-Mart mark had acquired a secondary meaning, (2) the Loufrani Mark had not acquired distinctiveness and so could not be registered, and (3) Smiley's use of the Loufrani Mark in certain classes of goods would create a likelihood of confusion with the Wal-Mart Mark.  (Ctrclm. ¶¶ 4, 31-35.)  Accordingly, the TTAB dismissed Smiley's opposition and sustained Wal-Mart's opposition.  (Ctrclm. ¶ 4.)

Following the TTAB's ruling, Smiley brought this action under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1), seeking judicial review of the TTAB's decision.  (Ctrclm. ¶ 5.)  Specifically, Smiley seeks an order (1) declaring its mark to be distinctive, (2) reversing and vacating the portion of the TTAB's order finding a likelihood of confusion, (3) directing the PTO

to issue a Notice of Allowance for Smiley's applications, and (4) reversing and vacating the portion of the TTAB's decision that found the Wal-Mart Mark had acquired distinctiveness.

Count I of Wal-Mart's six count Counterclaim seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the TTAB's decision was correct. (Ctrclm. ¶¶ 36-43.) Additionally, in Counts II-VI, Wal-Mart seeks declaratory judgments that any use or licensing of the Loufrani Mark would constitute trademark infringement under Section 43(a) of the Lanham Act (Count II), Section 32 of the Lanham Act (Count III), and the common law (Count IV), and would violate the Illinois Uniform Deceptive Trade Practices Act (Count V) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI). (Ctrclm. ¶¶ 44-94.)

## STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Ashcroft*, 129 S.Ct. at 1950. A claim has facial plausibility when the factual content in the pleadings allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

<u>**DISCUSSION**</u>

Smiley moves to dismiss Counts II-VI of Wal-Mart's Counterclaim on three grounds. First, Smiley alleges that these Counts present no case or controversy as required by the Declaratory Judgment Act, 28 U.S.C § 2201, and Article III, Section 2 of the United States Constitution. Second, Smiley moves to dismiss Counts II through IV based on the limited scope of this Court's review of the TTAB decision, arguing that for this Court to decide the issue of trademark infringement would constitute an advisory opinion. Finally, Smiley moves to dismiss Count VI because Wal-Mart failed to pled that it suffered actual damages as required by the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*. (2007).

**I. General Justiciability of Counts II-VI**

Counts II-VI of Wal-Mart's Counterclaim each seek a declaratory judgment pursuant to 28 U.S.C. § 2201 (a). Smiley's first argument for dismissing Counts II-VI is that no case or controversy exists because Smiley is not currently using the Loufrani Mark. Taking all of the facts in Wal-Mart's Counter-Complaint in the light most favorable to Wal-Mart, however, the Court finds that it has plead sufficient facts to establish that a justiciable controversy exists.

The Declaratory Judgment Act states that a court may "declare the rights and other legal relations of any interested party seeking such declaration," provided that the case presents an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). In other words, to sustain a declaratory judgment action, a plaintiff must show that his case presents an actual controversy. *See St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 626 (7th Cir. 2007). For purposes of § 2201(a), an "actual controversy" means a case or controversy as those terms are employed in Article III, Section 2 of the United States Constitution and its limitations on scope of the federal

judicial power. *See* U.S. CONST. art. III, § 2; *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937).

The Supreme Court recently clarified that in declaratory judgment actions, "'the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).[1] The Court's decision in *MedImmune* has been said to have "lowered the threshold" for demonstrating an actual case or controversy in declaratory judgment actions. *See AARP v. 200 Kelsey Associates, LLC*, 2009 WL 47499, at *6 (S.D.N.Y. January 6, 2009, Judge Gerard E. Lynch). There is no bright line rule, however, guiding a court's decision as to whether a declaratory judgment action presents a justiciable controversy. *See MedImmune*, 549 U.S. at 127. Indeed, "the distinction between a 'controversy' in the Article III sense and an abstract question of law 'is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is a such a controversy.'" *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (quoting *Deveraux v. City of Chi.*, 14 F.3d 328, 330-31 (7th Cir. 1994)).

Because the party seeking a declaratory judgment bears the burden of establishing that a controversy exists, *see Cardinal Chem. Co. v. Morton Int'l Inc.*, 508 U.S. 83, 95 (1993), this Court begins by determining whether Wal-Mart has plead sufficient facts to show the existence of a

---

[1] The Supreme Court's decision in *MedImmune* overturned the Federal Circuit's prior two-part test that first considered whether conduct by the patentee created a reasonable apprehension on the part of the declaratory judgment plaintiff that it would face an infringement suit; and second, examined whether conduct by the declaratory judgment plaintiff amounted to infringing activity or demonstrated concrete steps taken with the intent to conduct such activity. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.").

substantial controversy that would warrant a declaratory judgment, *see MedImmune*, 549 U.S. at 127.

In Counts II-IV, Wal-Mart claims that use of the Loufrani Mark by Smiley would constitute an infringement of Wal-Mart's registered trademark. Count II alleges that such use would violate Section 43(a) of the Lanham Act, which provides for civil liability when a party uses a symbol that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation" of goods or services. 15 U.S.C. § 1125(1)(a). Count III implicates Section 32 of the Lanham Act, which stipulates that a party using a reproduction of a registered mark in connection with sale or advertising of goods and services that is likely to cause confusion will be civilly liable. 15 U.S.C. § 1114(1)(a). Similarly, Count IV alleges that Wal-Mart has acquired a common law trademark that would be infringed through Smiley's use of the Loufrani Mark. Counts V and VI do not allege potential trademark infringement, but instead request declaratory judgments that use of the Loufrani mark would violate two state laws. Count V implicates the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"), which is violated when a person engages in a practice that causes likelihood of confusion as to the source of goods or services. 815 ILL. COMP. STAT. 510/1 *et seq.* (1965). In Count VI, Wal-Mark seeks a declaratory judgment that use of the Loufrani Mark would violate the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which provides a cause of action for any person who suffers actual damages as a result of a deceptive act or practice. 815 ILL. COMP. STAT. 505/1 *et seq.* (2007).

Although the grounds for liability in each of Wal-Mart's Counts are distinct, its allegations in each Count overlap substantially. In each of its Counts II-VI, for example, Wal-Mart argues that if Smiley were to begin to use the Loufrani Mark, it would create a likelihood of confusion with Wal-Mart's use of its Wal-Mart Mark. The likelihood of confusion is especially great, Wal-Mart

claims, because Smiley's PTO applications identify many goods and services identical to goods and services offered by Wal-Mart in its retail stores.

Examining Wal-Mart's factual allegations in a light most favorable to Wal-Mart, the primary evidence of a substantial controversy here is the case itself: that is, that the parties have numerous claims against one another over similar smiley-face marks that both desired to register with the PTO. Indeed, "[a] useful question to ask in determining whether a controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Publ'n Int'l, Ltd. v. Leapfrog Enter., Inc.*, No. 08-2800, 2008 WL 5142286, at *2 (N.D. Ill. Dec. 4, 2008, Judge Ronald A. Guzman) (citing *Benitec Austrl. Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007)). Here, the court need not speculate: the declaratory judgment defendant (Smiley) has raised numerous claims against the declaratory judgment plaintiff (Wal-Mart). Unlike in *Leapfrog*, where the declaratory judgment defendant never filed an application with the PTO to register his mark and merely threatened to sue, *see id.* at *3, in this case Smiley filed two applications with the PTO well over ten years ago, and has continued steadily to litigate the matter since that time.

Moreover, the fact that the parties have developed clear positions on the issue of infringement further demonstrates a substantial controversy and adverse legal interests of the parties. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007). In cases since *MedImmune*, the Federal Circuit has found declaratory judgment jurisdiction proper in patent and trademark cases where both parties previously articulated their positions with respect to infringement in a way that made further delay unnecessary. *Compare id.* (finding that even where a patentee explicitly stated that he would not sue, a declaratory judgment action against the patentee satisfied

Article III's case or controversy requirement because the parties had previously articulated their cases for potential infringement), *and Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1284-85 (Fed. Cir. 2007) (finding declaratory judgment jurisdiction proper where the parties took adverse, concrete positions regarding potential patent infringement prior to suit), *with Benitec*, 495 F.3d at 1343, 1347 (affirming dismissal of a counterclaim for declaratory judgment under *MedImmune* because the plaintiff had voluntarily dismissed its infringement claim and because the defendant had not yet filed a New Drug Application with the Food and Drug Administration). As these post-*MedImmune* cases show, courts emphasize whether the party opposing a claim for declaratory judgment has either filed its own claims or strongly articulated its opposing position, as Smiley has here, and if the party seeking declaratory judgment has filed a patent or trademark application, as Wal-Mart has here.

Smiley primarily relies on *Geisha LLC v. Tuccillo*, 525 F.Supp.2d 1002 (N.D. Ill. 2007), in support of its position that Wal-Mart's Counts II-VI do not present a case or controversy. In *Geisha*, the plaintiffs sought a declaratory judgment on the issue of trademark infringement, and the Court ruled on summary judgment that the case involved no real and immediate controversy. *Id.* at 1018. The case involved a logo used by the plaintiffs in connection with their restaurant. *Id.* at 1005. The defendant filed an intent-to-use application with the PTO for a nearly identical mark for use in the restaurant industry. *Id.* After reviewing the Rule 56 statements of fact, the court found that although the defendant had expressed an intent to use the mark, discovery revealed that in truth he had undertaken little if any preparation toward opening a restaurant with the logo, and in fact, indicated that it may not happen at all. *Id.* at 1015. Therefore, the court in *Geisha* determined that a declaratory judgment on the issue of potential infringement would be nothing more than an advisory opinion. *Id*. at 1018.

The facts pled by Wal-Mart in this case suggest that the issues presented are of more "immediacy and reality" than those in *Geisha*. *See MedImmune*, 549 U.S. at 126. To begin, Smiley purports to use and license the Loufrani Mark in connection with many of the same classes of goods and services offered by Wal-Mart. Unlike the discrete act of opening a restaurant, beginning to use the Loufrani Mark in the United States could be accomplished covertly and without Wal-Mart's immediate knowledge. Smiley even concedes in its Complaint that it has been using and licensing the Loufrani Mark for a variety of products in other countries since the 1970s, demonstrating its ability to promptly begin use of the mark. (*See* Cmplt. ¶¶ 24-26). More importantly, because *Geisha* was decided on a Motion for Summary Judgment, the parties had the benefit of discovery to establish the extent to which defendant had prepared to use the mark. *See* 525 F.Supp.2d at 1018. Here, although the parties engaged in discovery before the TTAB, Wal-Mart does not currently know what preparations Smiley has undertaken, making dismissal at this stage inappropriate. *See AARP*, 2009 WL 47499, at *9 (denying a motion to dismiss and holding that a showing of actual use is not required to sustain an action seeking a declaratory judgment based on an intent-to-use application).

Thus, the Court finds that Wal-Mart's pleadings adequately plead a substantial controversy between the parties, adverse legal interests of the parties, and sufficient immediacy and reality to present an actual case or controversy under Article III. *See MedImmune*, 549 U.S. at 127.

## II. Specific Justiciability of Wal-Mart's Trademark Infringement Claims in Counts II-IV

In addition to its general argument that Counts II-VI of Wal-Mart's Counterclaim present no case or controversy under Article III, Smiley contends that even if these Counts present a substantial controversy, there is another way in which this Court's determination of Counts II-IV would constitute an advisory opinion. As discussed above, Counts II through VI of Wal-Mart's

Counterclaim seek declaratory judgments regarding the issue of trademark infringement pursuant to the Lanham Act and the common law. Smiley claims that Wal-Mart's trademark infringement Counts inappropriately ask this Court to expand the TTAB's narrow finding of likelihood of confusion. Because TTAB is "an administrative tribunal of limited jurisdiction . . . empowered only to decide whether a given trademark is registerable," *Rosenruist-Gestao E Servicos LDA v. Virgin Enter. Ltd.*, 511 F.3d 437, 443 (4th Cir. 2007), Smiley claims that it would constitute an advisory opinion for this Court, in reviewing the TTAB decision, to decide whether hypothetical use of the Loufrani Mark constitutes trademark infringement.

Smiley's position depends on the tenet that the TTAB's determination of likelihood of confusion is distinct from, or more limited than, a district court's determination of the likelihood of confusion under the Lanham Act and the common law. However, in a district court's review of a decision by the TTAB, it may rule on the issues of likelihood of confusion and trademark infringement under the Lanham Act. *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 664, 678 (7th Cir. 2001) (affirming judgment of the district court overturning TTAB's finding regarding likelihood of confusion and trademark infringement under the Lanham Act). Thus, this Court may affirm the TTAB's explicit finding of likelihood of confusion and apply it to render a declaratory judgment that Smiley's actions would violate the Lanham Act or the common law.[2] *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 283-84 (1952) (noting that "[t]he Lanham Act . . . confers

---

[2] The Court notes that in the section of Smiley's reply brief addressing this issue, Smiley seems to return to its more general argument addressed in Section I when it states that "Wal-Mart cannot ask the Court to reach out to declare infringement where no appreciable use of the mark, other than expression of intent, has occurred." (R. 31, at p. 6.) To the extent that Smiley merely reiterates its argument that a declaratory judgment is inappropriate with respect to Counts II-IV because Smiley has not yet used Loufrani Mark, the Court refers the parties to its determination in Section I that Wal-Mart has pled sufficient facts to show a substantial controversy.

broad jurisdictional powers upon the courts of the United States" including the ability to award "injunctions . . . to prevent the violation of any registrant's rights").

Further, this Court's jurisdiction in its review of a decision by the TTAB is not constrained to the issues over which the TTAB had jurisdiction. *CAE, Inc.*, 267 F.3d at 673. Indeed, review of "the TTAB's decision" by "the district court is both an appeal and a new action, which allows the parties to request additional relief and to submit new evidence." *Id.* In its Counterclaim, then, Wal-Mart may appropriately request additional relief not specifically rendered by the TTAB. Furthermore, the Federal Rules of Civil Procedure provide that a counterclaim is not only allowed but compulsory if it arises out of the same transaction or occurrence as the opposing party's claim and does not require adding an additional party over which the court does not have jurisdiction. Fed.R.Civ.P. 13(a)(1). Wal-Mart's Counterclaim arises out of the same transaction or occurrence as Smiley's claims, in that it involves the same trademark oppositions and the TTAB's findings with respect to both parties. Thus, not only is the Court's jurisdiction not constrained by the TTAB's jurisdiction, but Wal-Mart's Counterclaim is compulsory.

Viewing all allegations in the Counter-Complaint in a light most favorable to Wal-Mart, therefore, as is appropriate in a Rule 12(b)(6) setting, Wal-Mart has plead sufficient facts to establish that this Court has jurisdiction to hear Wal-Mart's trademark infringement claims.

## III. Failure to Plead Damages in Count VI

In Count VI, Wal-Mart seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that any use or licensing of the Loufrani Mark would constitute a violation of the ICFA, 815 ILL. COMP. STAT. 505/1 *et. seq* (2007). Smiley moves to dismiss Count VI because Wal-Mart has not alleged that it suffered actual damages as required by the ICFA.

The ICFA prohibits unfair or deceptive acts or practices, and provides a cause of action for any person who suffers actual damages as a result of a violation. *See generally* 815 ILL. COMP. STAT. 505/1 *et. seq* (2007). To state a claim under the ICFA, a party must allege (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) that the deception occurred in the course of conduct involving trade and commerce, and (4) actual damages (5) proximately caused by the deception. *See Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Wal-Mart does not dispute that "[t]o state a claim under the ICFA, the plaintiff must allege . . . actual damages proximately caused by the deception." *Langendorf v. Conseco Senior Health Ins. Co.*, 590 F.Supp.2d 1020, 1022 (N.D. Ill. 2008). It would be impossible, however, for a claimant seeking a declaratory judgment that a future act would violate the ICFA to plead damages, because no violation would have yet occurred. Indeed, as Wal-Mart clarifies, Count IV does not allege a violation of the ICFA, but rather requests a determination by this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that Smiley's use of the Loufrani Mark would violate the ICFA. As established by *MedImmune*, to state a claim for declaratory judgment, Wal-Mart need only allege facts showing a substantial controversy between Smiley and Wal-Mart. *See* 549 U.S. at 127. As the Court determined in Section I, this case presents a substantial controversy as to the issue of likelihood of confusion underlying all counts of Wal-Mart's Counterclaim, including Count VI. Thus, Wal-Mart has adequately pled its allegations in Count VI of its Counterclaim so as to survive a Motion to Dismiss.

## CONCLUSION AND ORDER

_____For the reasons stated, Smiley's Motion to Dismiss is denied.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: November 12, 2009