## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FRANKLIN LOUFRANI, an individual, and THE SMILEY COMPANY SPRL, a Belgian Company, | ) ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | Case No. 09 CV 3062 |
| v. | ) ) | Judge Virginia M. Kendall |
| WAL-MART STORES, INC. | ) ) | Magistrate Geraldine Soat Brown |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM IN SUPPORT OF FRANKLIN LOUFRANI
## AND THE SMILEY COMPANY SPRL'S
## MOTION TO COMPEL

### INTRODUCTION

Walmart continues to obstruct Plaintiffs' attempts to (i) identify individuals and corporate representatives with discoverable information; (ii) obtain documents in Walmart's possession created by the advertising agency responsible for developing and implementing the Proposed Mark at the core of this case and (iii) identify other key facts relevant to the secondary meaning issue on appeal from the Trademark Trial and Appeal Board. Plaintiffs have reached an impasse in their good faith attempts to obtain this information from Walmart. Despite Plaintiffs' best efforts over several months, the extended deadline for the close of fact discovery looms, and Plaintiffs seek the Court's intervention as a last resort in an effort to get information necessary to schedule, prepare for and complete oral discovery before the current June 15, 2010 deadline.

## PROCEDURAL BACKGROUND

### Plaintiffs Initiate Written Discovery

On February 3, 2010, Franklin Loufrani and The Smiley Company, SPRL ("Plaintiffs or Smiley Company") served their First Set Of Interrogatories ("Rogs"), First Set Of Requests For The Production Of Documents And Electronically Stored Information ("RFPs") and First Set Of Requests For Admission Of Facts And Genuineness Of Documents ("RFAs") to Walmart Stores, Inc. ("Defendant or Walmart") (collectively, "Written Discovery"). Shortly thereafter, on Friday, February 19, 2010, Smiley Company served Notices of Deposition for the nine (9) Walmart Associates listed in Walmart's Rule 26(a)(1) disclosures as individuals likely to have discoverable information that may be used to support Walmart's claims and defenses, namely, (1) Steve Biddell—Senior Director Advertising; (2) Rex Conckell—Media Director; (3) Alan Dranow—Director Brand Communication; (4) Scott Huff—Senior Vice President Customer Experience; (5) Ken Mantel—Direction In-Store Presentation; (6) Carolyn Randolph—Manager Visitors Center; (7) Tony Rogers—Vice President Brand Marketing and Advertising; (8) Troy David Steiner—Senior Media Director and (9) Jamie Sohosky—Senior Director Marketing (the "Walmart Associates"). (A true and correct copy of Walmart's current Rule 26(a)(1) disclosures ("Rule 26 Disclosures") are attached as Ex. A.) On April 8, 2010, Smiley Company issued a Notice of Deposition with attached Rider pursuant to Fed. R. Civ. P. 30(b)(6). (A true and correct copy of the 30(b)(6) Notice is attached as Ex. B.)

### Walmart Serves Insufficient Written Discovery Responses

Walmart served responses to the Written Discovery on Friday, March 19, 2010. Walmart failed to produce any documents in connection with their Written Discovery responses on March

19, 2010 and many of its objections and responses were improper or incomplete. (A true and accurate copy of Walmart' Written Discovery Responses are attached as Group Ex. C). In addition, nearly three weeks later, Walmart's counsel stated that she had only recently learned that in 2006, Walmart's former advertising agency, Bernstein-Rein (responsible for development and implementation of the Proposed Mark and related advertising), returned a semi-trailer truck of documents to Walmart and that Walmart was currently in the process of "clawing back" those documents for review and production in response to the RFPs ("Bernstein-Rein Documents").

### Smiley Company Initiates "Meet And Confer" Process Pursuant to LR 37.2 In Effort To Resolve Discovery Dispute

On March 23, 2010, Plaintiff sent a letter to Walmart outlining the improper and incomplete objections and responses in Walmart's Written Discovery responses and Rule 26 Disclosures and requesting an opportunity to speak with Walmart's counsel to discuss the disputed matters in-person or over the phone pursuant to LR. 37.2 ("Discovery Letter"). (A copy of Smiley Company's Discovery Letter is attached as Ex. D). The Discovery Letter referenced, among other things, (i) Walmart's failure to comply with disclosure obligations under Fed. R. Civ. P. 26(a)(1) (ii) Walmart's failure to identify individuals in response to Interrogatories 1 and 15 and (iii) and incomplete information provided in response to Interrogatories 5, 19, 21 and 22.

Walmart sent a response to the Discovery Letter on March 31, 2010 ("Response"). With respect to Walmart's failure to make good on its promise to supplement its Rule 26 Disclosures and identify certain other individuals, Walmart stated that "[w]e are still working to narrow our list of individuals and should be able to do so before [April 13, 2010]. Taking all nine witnesses' depositions will be an inefficient way to resolve this dispute." In addition, Walmart noted that "the amount of time that has passed since Walmart began using this [Proposed Mark], as well as the nature of the document productions in the Opposition Proceedings, makes this task

3

significantly more difficult than in standard commercial litigation." (A true and accurate copy of the Response is attached as Ex. E).

### Walmart Stalls Resolution Of The Discovery Disputes

Following receipt of Walmart's Response, pursuant to LR 37.2 , the parties agreed to participate in a phone conference on April 9, 2010 in an effort to resolve the ongoing disputes. On April 6, 2010, Walmart's counsel confirmed that Walmart would provide the long-awaited supplemented Rule 26 Disclosures by disclosing 4-5 Walmart Associates.

On April 9, 2010, the parties participated in a phone conference pursuant to LR 37.2. Walmart's counsel stated that much of the information needed to resolve the substantive disputes set forth in the Discovery Letter and Response would be gleaned during his upcoming trip to Walmart headquarters in Bentonville, Arkansas the following week. Based upon that information, the parties agreed to suspend the LR 37.2 conference; resume discussions regarding the Bernstein-Rein Documents production early the following week and resume discussions regarding the remainder of the substantive disputes set forth in the Discovery Letter and Response on Thursday, April 15, 2010. The negotiations resumed on April 13, 2010 and April 20-21, 2010, but the parties were not able to resolve all of the remaining disputes. After extensive negotiations, four (4) disputes remain:

### (1) Walmart Failed To Comply With Its Disclosure Obligations Under Fed. R. Civ. P. 26(a)(1)(A)(i) and 26(e)

On Monday, February 22, 2010, counsel for Smiley Company and Walmart participated in a phone call. Walmart's counsel agreed to work with Smiley Company to supplement Walmart's Rule 26 Disclosures and identify only those individuals whose knowledge Walmart intends to rely upon in an effort to avoid unnecessary depositions. On March 9, 2010, Walmart's counsel again promised to provide the supplemented Rule 26 Dislcosures. On March 16, 2010,

Smiley Company's counsel followed up again with Walmart's counsel regarding the promised supplemented Rule 26 Disclosures but received no response.

During the April 20-21, 2010 LR 37.2 conference call, Walmart was still unable to provide the supplemented Rule 26 Disclosures promised multiple times over the preceding two months. In addition, Walmart identified a new Walmart Associate, Randy Hughes, who had not been previously disclosed, but did not provide the information required under Fed. R. Civ. P. 26(a)(1)(A)(i) in connection with Mr. Hughes. Although Walmart did confirm its intention to rely upon the testimony of previously disclosed Walmart Associates Troy Steiner and Ken Mantel, Walmart's counsel also stated that they anticipate "identifying two additional witnesses soon." (Walmart's April 23, 2010 E-Mail is attached hereto as Ex. F). Smiley Company's counsel followed up later to inquire regarding, among other things, the status of Walmart's efforts to supplement the Rule 26 Disclosures and identify the "two additional witnesses". (A true and accurate copy of Plaintiff's April 26, 2010 E-mail is attached as Ex. G). As of this filing, Walmart has not responded to Smiley Company's April 26, 2010 E-mail, supplemented the Rule 26 Disclosures.

### 2. **Walmart Failed To Designate Witnesses Pursuant To Fed. R. Civ. P. 30(b)(6)**

During the April 20, 2010 LR 37.2 conference, Walmart stated that it would designate witnesses pursuant to the Rule 30(b)(6) Notice served on April 8, 2010. On April 26, 2010, Smiley Company followed up regarding the status of Walmart's 30(b)(6) witness designation. As of this filing, Walmart has neither responded to Smiley Company's April 26, 2010 inquiry nor designated witnesses pursuant to Fed. R. Civ. P. 30(b)(6).

3. **Walmart Failed To Produce Responsive Bernstein-Rein Documents Discovered In Storage**

On April 13, 2010, Smiley Company's counsel and Walmart's counsel resumed discussions regarding Walmart's Bernstein-Rein document production. Walmart's counsel indicated that she had identified in excess of 100 boxes of relevant Bernstein-Rein Documents in Walmart's possession and would need approximately two weeks to review the Bernstein-Rein Documents and produce those responsive to the RFPs. Plaintiff's counsel followed up two weeks later to inquire regarding, among other things, the progress of the Bernstein-Rein Documents review and production. As of this filing, Walmart has neither responded to the April 26, 2010 E-mail, nor produced any responsive Bernstein-Rein Documents.

4. **Walmart Failed To Supplement Its Interrogatory Responses**

In connection with Walmart's incomplete Written Discovery, during the April 20, 2010 conference, Walmart agreed to provide the following supplemental responses to Rogs 5, 15, 19, 21 and 22:

· (Rog 5) Confirmation that the dollar amounts referenced in Walmart's response represent the figure spent solely on television advertising depicting the Proposed Mark during the listed time periods
· (Rog 15) Identification of the Walmart and advertising agency individuals comprising the referenced "team"
· (Rog 19) Identification of television spots aired in the U.S. from January 26, 1996 through June 3, 1997
· (Rog 21) Production of referenced photograph and identification of approximate beginning and end dates for the Rollback Campaign
· (Rog 22) Identification of approximate beginning and end dates for the Better Everyday Campaign

Smiley Company's counsel followed up on April 26, 2010 to inquire regarding, among other things, when Smiley Company could expect to receive the supplemental Rog responses. As of the date of this filing, Walmart has not responded to Smiley Company's April 26, 2010 inquiry nor served any supplemental Interrogatory responses.

6

In summary, after multiple consultations in person and by telephone (set forth in more detail below) and good faith attempts to resolve differences, the parties are unable to reach an accord as to the disputes set forth above.

| Date | Time | Place | Paricipating Counsel |
|------|------|-------|----------------------|
| 2/22/10 | 3:30 p.m. | telephone | Natalie A. Harris (Smiley Company)<br>Wendi E. Sloane (Walmart)<br>Rebecca D. Ray (Walmart) |
| 3/9/10 | 10:30 a.m. | Mandell Menkes LLC | Steven L. Baron (Smiley Company)<br>Natalie A. Harris (Smiley Company)<br>Robert E. Shapiro (Walmart)<br>Rebecca D. Ray (Walmart) |
| 4/6/10 | 4:00 p.m. | telephone | Steven L. Baron (Smiley Company)<br>Natalie A. Harris (Smiley Company)<br>Rebecca D. Ray (Walmart)<br>Derek Feagans (3rd Party witness) |
| 4/9/10 | 10:30 a.m. | telephone | Steven L. Baron (Smiley Company)<br>Natalie A. Harris (Smiley Company)<br>Robert E. Shapiro (Walmart)<br>Rebecca D. Ray (Walmart) |
| 4/13/10 | 9:30 a.m. | telephone | Natalie A. Harris (Smiley Company)<br>Rebecca D. Ray (Walmart) |
| 4/20/10 | 3:00 p.m. | telephone | Steven L. Baron (Smiley Company)<br>Natalie A. Harris (Smiley Company)<br>Robert E. Shapiro (Walmart)<br>Shermin Kruse (Walmart)<br>Rebecca D. Ray (Walmart) |
| 4/21/10 (previous conference continued) | 2:30 p.m. | telephone | Natalie A. Harris (Smiley Company)<br>Robert E. Shapiro (Walmart)<br>Shermin Kruse (Walmart)<br>Rebecca D. Ray (Walmart |

## ARGUMENT

## I. WALMART MUST SUPPLEMENT ITS RULE 26 DISCLOSURES TO COMPLY WITH FED. R. CIV. P. 26(a)(A)(i)

Walmart has failed to meet its disclosure obligations under Fed. R. Civ. P. 26(a)(1)(A)(i) and 26(e). Walmart's Rule 26 Disclosures list nine (9) individuals, but fail to disclose the subject(s) about which *each* individual is likely to have discoverable information. Furthermore,

by Walmart's own admission, Walmart *does not* intend to rely on all of the listed individuals to support its claims or defenses, and, there exist at least two additional undisclosed individuals upon whom Walmart *does* intend to rely, but has not disclosed.

Smiley Company is entitled to know the identity of each individual likely to have discoverable information—along with the subjects of that information—that Walmart *may use to support its claims or defenses*. *See Menotti v. Met. Life Ins. Co.*, No. 08 C 2767, 2010 U.S. Dist. LEXIS 6150, at *10 (N.D. Ill. Jan 25, 2010). Despite Smiley Company's request and Walmart's repeated promises over nearly three months, Walmart has failed to supplement its Rule 26 Disclosures or provide the information required by Fed. R. Civ. P. 26(a)(1)(A)(i). *See Crouse v. Nat'l Warehouse Invest. Co.*, No. IP02-0071-C-T/K, 2003 U.S. Dist. LEXIS 9066, at *7 (S.D. Ind. April 10, 2003) (noting that a party has a duty to supplement or correct a Rule 26(a) disclosure). As of this filing, Walmart has only confirmed that Walmart Associates Troy David Steiner, Ken Mantel and Randy Hughes may have discoverable information that Walmart may use to support its claims or defenses. Walmart has not disclosed the nature of the discoverable information likely possessed by each of these individuals, nor has it disclosed *any* information about the identity or information known by the "two additional witnesses" referenced in Walmart's April 23, 2010 E-mail. Walmart must identify these "two additional witnesses" and disclose the subject of the information possessed by each of the disclosed individuals. *See e.g. Amari Co. v. Burgess*, No. 07 C 1425, 2009 U.S. Dist. LEXIS 39779, at *4 (N.D. Ill. May 7, 2009) (compelling detailed description of each disclosed individual's knowledge).

## II. WALMART MUST DESIGNATE CORPORATE REPRESENTATIVES PURSUANT TO FED. R. CIV. P. 30(b)(6)

Walmart must designate corporate representative(s) to testify regarding each of the subject matters set forth on the Rider to Smiley Company's Rule 30(b)(6) Notice served on April

8, 2010. Walmart has "a duty to make a conscientious good faith effort to designate the persons having knowledge of the matters sought by [Smiley Company] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [Smiley Company] as to the relevant subject matters" on Walmart's behalf. *Buckys-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995). It has been over a month since Smiley Company served the 30(b)(6) Notice and several weeks since Walmart assured Smiley Company that it would designated corporate representatives. Smiley Company must know the number and identity of corporate representatives designated to testify about each of the ten subject matters set forth in the Rider in order to prepare for and re-schedule the Rule 30(b)(6) depositions for a reasonable time and place before the June 15, 2010 close of the fact discovery period.

## III. WALMART MUST PRODUCE ALL BERNSTEIN-REIN DOCUMENTS RESPONSIVE TO SMILEY COMPANY'S REQUESTS FOR PRODUCTION

Walmart must produce all documents recently discovered in Walmart-controlled storage delivered by the Bernstein-Rein advertising agency to Walmart in 2006 following the end of their business relationship. "The Federal Rules permit discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Fellowes, Inc. v. Aurora Corp. et al.*, No. 07 C 7237, 2009 U.S. Dist. LEXIS 38768, at *1 (N.D. Ill. April 1, 2009). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Id.* Based on testimony given in connection with the Trademark Trial and Appeal Board Opposition, it is clear that Bernstein-Rein was instrumental in developing and implementing the Proposed Mark in connection with Walmart's advertising during the period of time relevant to this case. Walmart's counsel has represented that Walmart is in possession of over one hundred

9

(100) boxes of documents from Bernstein-Rein which may include material responsive to Smiley

Company's RFPs, including, but not limited to:

RFP 2: All documents related to any studies, surveys, focus groups or similar research conducted by or on behalf of Walmart in connection with the adoption, use, effect or public perception of the Proposed Mark before or during the Relevant Period

RFP 4: All documents related to the amount and manner of Walmart advertising in the U.S. bearing the Proposed Mark during the Relevant Period.

RFP 5: All documents related to any evaluations of the Proposed Mark during any portion of the Relevant Period conducted by or on behalf of Wal-Mart.

RFP 6: All documents related to the amount and manner of Walmart advertising in the U.S. bearing the Proposed Mark for the period beginning June 4, 1997 and ending June 4, 2005.

RFP 9: All documents related to the length of time and manner of Walmart's use of the Proposed Mark in the U.S. during the Relevant Period

RFP 10: All documents related to the length of time and manner of Walmart's use of the Proposed Mark for the period beginning June 4, 1997 and ending June 4, 2005.

Despite Walmart's counsel's assurances that Walmart would review the Bernstein-Rein

Documents and produce those responsive to Smiley Company's RFPs before the end of April,

Walmart has not produced a single Bernstein-Rein Document and has failed to respond to Smiley

Company's subsequent inquiries regarding the status of Walmart's review and production.

Smiley Company is entitled to compel Walmart to disgorge responsive Bernstein-Rein

Documents.

## IV.  WALMART MUST SUPPLEMENT ITS INTERROGATORY RESPONSES

Walmart's responses to Rog Nos. 5, 15, 19, 21 and 22 are non-responsive and incomplete.

During the course of the parties various LR 37.2 conferences, Walmart agreed to supplement its

Rog responses as follows:

**Rog. 5**: Identify the percentage of Walmart's total advertising budget for the Relevant Period spent on print media advertisements featuring the Proposed Mark that were published in the U.S. during the Relevant Period, including all calculations used to arrive at that figure and all documents supporting those calculations and the percentage.

**ANSWER:** [Objections omitted] Subject to and without waiving its General and Specific Objections, Wal-Mart states that it spent in excess of $1million on print media advertisements during 1996 and in excess of $1 million on print media advertisement during 1997.

**Agreed Supplemental Information:** Walmart agreed to confirm that the referenced dollar amounts represent the figure spent solely on television advertising depicting the Proposed Mark during the listed time periods as asked in the original Rog 5.

---

**Rog 15**: Identify all individuals comprising the "team" (Steiner Deposition 22:25) of individuals from Walmart and its advertising agencies involved in the initial selection of the Proposed Mark.

**ANSWER:** [Objections omitted] Subject to and without waiving its General and Specific Objections, Walmart continues to identify people who worked at Walmart or its advertising agency over fourteen years ago who may have information responsive to this interrogatory. Investigation continues.

**Agreed Supplemental Information:** Walmart agreed to identify the Walmart and advertising agency people comprising the referenced team

---

**Rog 19**: Identify all television advertisements that featured the Proposed Mark, other than Proposed TV Spot A, that aired during the Relevant Period in the U.S.

**ANSWER:** [Objections omitted] Subject to and without waiving its General and Specific Objections, Walmart states that it is currently unaware of any television ads using the Proposed Mark during the Relevant Period other than those identified in Exhibits 7, 8 and 9 to the Deposition of Rusty Scholtes. Investigation continues.

**Agreed Supplemental Information:** Walmart agreed to identify the specific spots identified in Exhibits 7, 8 and 9 to the Deposition of Rusty Scholtes that aired in the U.S. during the Relevant Period.

---

**Rog 21**: Identify the earliest date on which any Rollback Campaign advertisement was aired or published in the U.S.

**ANSWER**: [Objections omitted]  Subject to and without waiving its General and Specific Objections, Walmart states that it cannot currently identify the earliest date it used an advertisement using the phrase "Rollback Campaign."  Answer further, Walmart states that the Proposed Mark was first used by Walmart in an advertising circular on January 26, 1996, but that an undated photo indicates that Walmart used a Smiley face in its stores prior to that date. Walmart will produce the undated photo. Investigation continues.

**Agreed Supplemental Information:** Walmart agreed to produce the identified photograph and provide approximate beginning and end dates for the referenced advertising campaign with the understanding that Wlmart intends to preserve its objection to the defined term "Rollback Campaign".

**Rog 22**: Identify the latest date on which any Better Everyday Campaign advertisement was aired or published in the U.S.

**ANSWER:** [Objections omitted] Subject to and without waiving its General and Specific Objections, Walmart states that it cannot currently identify the latest date it used an advertisement using the phrase "Better Everyday." Investigation continues.

**Agreed Supplemental Information:**  Walmart agreed to provide approximate beginning and end dates for the referenced advertising campaign with the understanding that Wlmart intends to preserve its objection to the defined term "Better Everyday Campaign".

As of this filing, Walmart has failed to supplement its responses pursuant to the agreement reached between the parties on April 20-21, 2010.  Smiley Company is entitled to specific responses to the particular questions asked in each of the subject Rogs and as a result, Walmart should be compelled to supplement their responses accordingly.  *See Zip Dee v. Dometic Corp.*, No. 93 C 3200, 1996 U.S. Dist. LEXIS 14400, at *2-3 (N.D. Ill. Sept. 30, 1996) (compelling supplemental specific "rifled" response to question raised in interrogatory in place of original "blunderbuss attack" of an answer.)

## CONCLUSION

For the reasons set forth herein, Franklin Loufrani and The Smiley Company SPRL hereby request entry of an order compelling Walmart Stores, Inc. to (i) supplement its Rule 26

Disclosures to include all individuals with discoverable information whom Walmart may use to support its claims or defenses, including the subjects of the information likely known by each individual; (ii) produce all Bernstein-Rein Documents responsive to any Requests For Production of Documents or certify that no responsive Bernstein-Rein Documents exist; (iii) designate Walmart corporate representative(s) to testify as to each of the ten subject matter areas identified on the Rule 30(b)(6) Notice Rider, including which representative(s) shall testify about each subject matter area and (iv) supplement its Interrogatory responses with the Agreed Supplemental Information set forth herein. Franklin Loufrani and The Smiley Company SPRL further request that Walmart be required to comply with any such order within seven (7) days.

Respectfully submitted,

**FRANKLIN LOUFRANI and THE SMILEY COMPANY SPRL**

By: __s/ Natalie A. Harris_____
             One of their attorneys

Steven L. Baron (#6200868)
Natalie A. Harris (#6272361)
Lindsay H. LaVine (#6291725)
MANDELL MENKES LLC
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
(312) 251-1000

*Counsel for Plaintiffs/Counter-Defendants*